646 So.2d 351 (1994)
Kai David MIDBOE
v.
COMMISSION ON ETHICS FOR PUBLIC EMPLOYEES and Richard Ieyoub, Attorney General.
No. 94-CA-2270.
Supreme Court of Louisiana.
November 30, 1994.
*353 Maris L. McCrory, R. Gray Sexton, Baton Rouge, Richard P. Ieyoub, Atty. Gen., James M. Ross, Asst. Atty. Gen., for applicant.
Kai David Midboe, Richard E. Matheny, Baton Rouge, for respondent.
John M. Madison, Jr., Shreveport, for amicus curiae Wiener, Weiss, Madison & Howell.
WATSON, Justice.[1]
A direct appeal was lodged to review the district court's conclusion that LSA-R.S. 42:1121 of the Code of Governmental Ethics has been unconstitutionally applied to conflict with the Louisiana Supreme Court's exclusive *354 power to regulate the discipline of attorneys under La. Const. art. 5, § 5(B) and the Rules of Professional Conduct for attorneys. La. Const. art. 5, § 5(D).

FACTS
Kai David Midboe, Secretary of the Louisiana Department of Environmental Quality (DEQ) from January 1992 to January 1994, is an attorney licensed to practice law in the State of Louisiana. In January 1994, Midboe and a law firm requested an advisory opinion from the Commission on Ethics for Public Employees (Commission) regarding post-employment restrictions of the Code of Governmental Ethics, LSA-R.S. 42:1101 et seq., on Midboe's proposed "of counsel" relationship with the law firm.
The Commission issued an opinion January 20, 1994 (Ethics Commission Docket No. 94-005), concluding that the ethics rules prohibited Midboe (for two years) from compensated assistance of clients in connection with DEQ transactions and from engaging in interoffice communications with other law firm attorneys regarding DEQ transactions. The Commission concluded that Midboe could assist persons in state legislative transactions, including environment matters, and could assist persons in transactions involving federal agencies and state administrative agencies other than DEQ.
The Commission concluded that, as the agency head of DEQ, Midboe "participated" in all transactions that arose within DEQ while he was DEQ Secretary. Therefore, for a two-year period, any firm in which Midboe became an officer, director, trustee, partner or employee could not assist clients for compensation in any transactions that arose at DEQ while Midboe was Secretary. However, the Commission stated that if Midboe's relationship with a firm, law firm or otherwise, was clearly that of an "independent contractor" as defined in Hickman v. Southern Pacific Transport Co., 262 La. 102, 262 So.2d 385 (1972), then that firm would not be restricted from assisting clients before DEQ. If Midboe had other part-time employment that resulted in some type of proscribed activity, the Commission determined that conduct would not be attributable to a law firm with which Midboe had an independent contractor relationship, assuming that relationship had no impact on the part-time employment.
The Commission concluded no violation of the ethics code was presented if Midboe received compensation for public speaking on environmental issues. The Commission also determined that Midboe could contact entities and encourage them to engage a law firm with which Midboe was associated as long as Midboe did not represent those clients in matters involving DEQ.
The Commission invited Midboe to present for its consideration any employment contract to determine if there were any ethics rules violations. In February 1994, Midboe submitted to the Commission a contract for professional services with an engineering firm to determine whether the employment relationship would meet the independent contractor status necessary to avoid violating the ethics rules. Midboe explained that relationship as consulting work in which he provides opinions on environmental construction regulations. After one modification, the Commission concluded the employment contract was that of an independent contractor.
In June 1994, Midboe filed a Petition for Declaratory Judgment in this Court seeking a declaratory ruling on the constitutionality of LSA-R.S. 42:1121(C). The application was denied, and Midboe was advised to seek relief in the district court. Midboe v. Commission on Ethics for Public Employees, 94-1419 (La. 6/3/94), 638 So.2d 1071.
On July 1, 1994, Midboe filed a Petition for Declaratory Judgment and Injunction in the 19th Judicial District Court seeking an order declaring the Code of Governmental Ethics, LSA-R.S. 42:1101 et seq., and Ethics Commission Docket No. 94-005 unconstitutional to the extent that they infringe on judicial authority and conflict with the Rules of Professional Conduct for lawyers. Midboe also sought a preliminary and permanent injunction against the Commission's enforcement of the ethics code or its opinion against him. The Attorney General was made a party defendant due to the constitutional challenge. LSA-C.C.P. art. 1880.
*355 After denying the Commission's exceptions of no cause and no right of action, the trial court rendered judgment declaring the Code of Governmental Ethics and Ethics Commission Docket No. 94-005 unconstitutional as applied in this case because they conflicted with Rule 1.11 of the Rules of Professional Conduct and infringed on the Louisiana Supreme Court's exclusive and plenary power to regulate the practice of law. The trial court enjoined the Commission from enforcing LSA-R.S. 42:1121(C) or the Commission's opinion against Midboe in a manner that conflicted with Rule 1.11. A direct appeal was taken to this Court. La. Const. art. 5, § 5(D).

LAW AND DISCUSSION

Preliminary/Procedural Issues:
The Commission argues the district court did not have jurisdiction to rule on Midboe's petition. La. Const. art. 10, § 21, provides that "decisions of a[n ethics] board shall be appealable, and the legislature shall provide the method of appeal." The method of appeal of ethics board decisions is statutorily mandated under LSA-R.S. 42:1142 to the First Circuit Court of Appeal. LSA-R.S. 42:1142 states, in pertinent part:
A. Appeals to the Court of Appeal, First Circuit. Whenever action is taken against any public servant or person by an ethics body or by an agency head by order of the commission, or whenever any public servant or person is aggrieved by any action taken by an ethics body, he may appeal therefrom to the Court of Appeal, First Circuit, if application to the ethics body is made within thirty days after the decision of the ethics body becomes final. Any preliminary, procedural, or intermediate action or ruling by an ethics body is subject to the supervisory jurisdiction of the appellate court as provided by Article V, Section 10 of the constitution. The Court of Appeal, First Circuit, shall promulgate rules of procedure to be followed in taking and lodging such appeals.
"[A]n advisory opinion by the Commission is a preliminary or intermediate action or ruling by an ethics body within the meaning of La.R.S. 42:1142." Board of Com'rs v. Commission on Ethics, 484 So.2d 845, 849 (La. App. 1 Cir.), writ denied, 487 So.2d 440 (La. 1986). The Commission argues that, despite titling the petition as one for declaratory judgment, the real issue was review of the Commission's advisory opinion.
Had Midboe's petition sought a determination of the ethics code's application or interpretation, the constitutional and statutory scheme outlined above provides for an initial determination utilizing the Commission's expertise and review by the court of appeal. Daily Advertiser v. Trans-La, Etc., 612 So.2d 7, 31 (La.1993); Board of Com'rs v. Commission on Ethics, 484 So.2d at 849. However, Midboe's petition clearly sought a determination of the constitutionality of the statutory provisions of the ethics code. The determination whether a statute is unconstitutional is a purely judicial function. State v. Board of Sup'rs of Elections, 186 La. 949, 173 So. 726 (La.1937). The judicial power of the state is constitutionally vested in the courts. La. Const. Art. 5 § 1. The Commission is not a court but is an administrative agency in the executive branch of state government. See Bagert v. Bd. of Ethics for Elected Off., 594 So.2d 922 (La.App. 1 Cir. 1992). An administrative agency does not have the authority to determine the constitutionality of statutes. See Church Point Wholesale Beverage v. Tarver, 614 So.2d 697, 702 n. 8 (La.1993), and Red River Coors, Inc. v. McNamara, 577 So.2d 187 (La.App. 1 Cir.), writ denied, 582 So.2d 1306 (La.1991) (Board of Tax Appeals does not have authority to decide the constitutionality of statutes); Bell v. Dept. of Health and Human Resources, 483 So.2d 945, 947 n. 1 (La.1986), cert. denied, 479 U.S. 827, 107 S.Ct. 105, 93 L.Ed.2d 55 (1986), and Appeal of Brisset, 436 So.2d 654 (La.App. 1 Cir.), writ denied, 441 So.2d 749 (La.1983) (Civil Service Commission does not have the authority to decide the constitutionality of statutes). Thus, the district court, and not the Commission, had jurisdiction to rule on the constitutionality of the statutes.
Since the Commission, an administrative agency, did not have the authority to decide the constitutionality of the statutes, Midboe was not required to raise his constitutional *356 challenge before the Commission prior to filing his petition in district court. See Daily Advertiser, supra.
The Commission argues Midboe never presented a case or controversy to the district court, but instead requested a constitutional determination on a theoretical employment situation. The Commission also maintains Midboe did not have standing to contest the constitutionality of LSA-R.S. 42:1121(C) since this subsection applies to the future employer, not the former public servant.
LSA-C.C.P. arts. 1871 et seq. govern declaratory judgments in Louisiana. These articles provide that courts may declare rights, status, and other legal relations within their respective jurisdictions, whether or not further relief is or could be claimed. LSA-C.C.P. art. 1871. Persons whose rights, status, or other legal relations are affected by a statute, may have determined any question of construction or validity arising under the statute. LSA-C.C.P. art. 1872. The declaratory judgment provisions are to be liberally construed and administered in order to settle and afford relief from uncertainty with respect to rights, status, and other legal relations. LSA-C.C.P. art. 1881. The Louisiana Constitution implicitly prohibits courts from issuing advisory opinions which will not affect the parties' rights. Church Point Wholesale Beverage v. Tarver, 614 So.2d at 701.
The issue of when a controversy is "justiciable" as opposed to when a controversy presents merely an "advisory" question is a difficult one. Louisiana Independent Auto Dealers Ass'n v. State, 295 So.2d 796 (La. 1974). A justiciable controversy is shown if there is a genuine controversy between a plaintiff and a defendant as to legal rights requiring a judicial determination. Id. Such a controversy is presented here.
"[A] person is entitled to relief by declaratory judgment when his rights are uncertain or disputed in an immediate and genuine situation and the declaratory judgment will remove the uncertainty or terminate the dispute." In re P.V.W., 424 So.2d 1015, 1020-21 n. 10 (La.1982). Midboe, as a former state agency head within two years following termination of his public service, is faced with an immediate and genuine situation, the applicability of ethics code's rules to his present attorney employment opportunities. Midboe has a real interest in obtaining a declaratory judgment to clarify his employment options. If he proceeded without such a declaration, he might subject himself and his future employer to the Commission's administrative sanctions. See Board of Com'rs v. Commission on Ethics, 484 So.2d at 848. The Commission has a statutorily mandated duty to administer and enforce the ethics code. LSA-R.S. 42:1131(C). Thus, there is a genuine controversy between the parties. "To require private individuals to do business under the act at their peril in order to acquire standing is to defeat a major purpose of the declaratory judgment act." Louisiana Independent Auto Dealers Ass'n, 295 So.2d at 801.
Finally, the Commission argues injunctive relief was inappropriate as there was no irreparable injury and no violation of Midboe's constitutional rights. "A court may declare the rights of parties in order to terminate an actual controversy even if further relief is or could be claimed." Chauvet v. City of Westwego, 599 So.2d 294, 296 (La. 1992); LSA-C.C.P. arts. 1871, 1875. Midboe's request for injunctive relief was an appropriate method of demanding the "further relief" contemplated under Article 1871 in the event that the district court ruled in his favor on his claim for declaratory relief. Id. Such a procedure is encouraged as it conserves judicial and client resources. Id., 599 So.2d at 296 n. 1.

Constitutional Issue:
Midboe argued the provisions of R.S. 42:1121(C)[2] conflicted with Rule *357 1.11(a)[3] of the Rules of Professional Conduct for lawyers. Under the Rule, a law firm with which a former public official or employee associated could undertake or continue representation of a matter, in which the lawyer participated while a public official or employee, if the firm: (1) screens the lawyer from participation in the matter; (2) apportions none of the fee received to the lawyer; and (3) gives prompt written notice to the appropriate governmental agency, which may ascertain compliance with the rule's provisions. Under the statute, the firm is prevented for two years following termination of the lawyer's public service from representation in connection with a transaction in which the former public servant participated during his or her public service and involving the agency by which he or she was formerly employed or held office, as long as the former public servant is an officer, director, trustee, partner, or employee of the firm.
The district court held the statute prohibited conduct which would be allowed under the Rules of Professional Conduct. Relying on the Louisiana Supreme Court's exclusive and plenary power to regulate the practice of law and the Court's pronouncement in Succession of Wallace, 574 So.2d 348 (La.1991), that legislative rules which supplant disciplinary rules must fall, the district court pronounced the ethics code statutes and the Commission's conclusions unconstitutional as applied and enjoined their enforcement against Midboe.
Enactments of the legislature are presumed constitutional and a party challenging a statute's validity must articulate a particular constitutional provision that limits the legislature's powers. Chamberlain v. State through DOTD, 624 So.2d 874, 879 (La.1993). In enacting the ethics code, the legislature was acting pursuant to La. Const. art. X, § 21:
The legislature shall enact a code of ethics for all officials and employees of the state and its political subdivisions. The code shall be administered by one or more boards created by the legislature with qualifications, terms of office, duties, and powers provided by law.
The constitutional mandate provides that the ethics code applies to all public officials and employees; there is no exemption for public officials and employees who are attorneys.
By comparison, the Louisiana Supreme Court has exclusive and plenary power to define and regulate all facets of the practice of law. Succession of Wallace, 574 So.2d at 350. The sources of this power are the court's inherent judicial power emanating from the constitutional separation of powers *358 in La. Const. art. II; the traditional function of attorneys as officers of the courts; and the court's exclusive original jurisdiction of attorney disciplinary proceedings provided in La. Const. art. 5, § 5(B) ("The supreme court has exclusive original jurisdiction of disciplinary proceedings against a member of the bar.") Id.; Saucier v. Hayes Dairy Products, Inc., 373 So.2d 102, 115 (La.1978), on rehearing (June 25, 1979); Singer Hutner Levine, Etc. v. La. State Bar, 378 So.2d 423, 425-26 (La.1979); Louisiana State Bar Ass'n v. Connolly, 201 La. 342, 9 So.2d 582 (1942).
The jurisprudence has established beyond doubt that the Louisiana Supreme Court has a duty and responsibility to assert its authority to regulate the practice of law. Pursuant to this authority, the Court adopted and promulgated the Articles of Incorporation of the Louisiana State Bar Association as court rules. The Articles incorporated the Code of Professional Responsibility to regulate attorneys' practices. Effective January 1, 1987, the Rules of Professional Conduct replaced the former Code of Professional Responsibility. The Code of Professional Responsibility [now the Rules of Professional Conduct] has the force and effect of substantive law. Since these disciplinary rules are set forth by virtue of the Court's exercise of its prevailing judicial authority, they override legislative acts which tend to impede or frustrate that authority. Only legislative enactments which aid the Court's inherent powers will be approved. Saucier; Singer Hutner Levine, etc.; Leenerts Farms, Inc. v. Rogers, 421 So.2d 216, 219 (La.1982); City of Baton Rouge v. Stauffer Chemical, 500 So.2d 397, 400 (La.1987); Mire v. City of Lake Charles, 540 So.2d 950, 954 (La.1989); Succession of Wallace. When it appears a statute may conflict with a disciplinary rule, the Court must first look to see if the statute can be given a reasonable construction that does not contravene the disciplinary rule. Saucier, 373 So.2d at 115, 116-17; Neely v. Hollywood Marine, Inc., 530 So.2d 1116, 1121 (La.1988), cert. denied, 489 U.S. 1080, 109 S.Ct. 1533, 103 L.Ed.2d 838 (1989).
This Court has invariably struck down statutes which contravene or frustrate enforcement of the Court's disciplinary rules as an unconstitutional infringement on the Court's authority to regulate the practice of law. As noted by the district court, this Court invalidated a statute in Succession of Wallace which provided that an executor of an estate could discharge the attorney designated in the testator's will "only for just cause." A disciplinary rule provided that an attorney representing a client in any matter is required to withdraw from employment if he is discharged by his client. In Singer Hutner Levine, etc., the Court held unconstitutional a statute which made it criminal for Louisiana lawyers to form partnerships with out-of-state law firms and use the out-of-state law firm's letterheads. A disciplinary rule allowed such a relationship as long as the letterheads and other listings set out the jurisdictional limits of the members.
Where the Court is able to give a statute a reasonable construction which does not contravene a disciplinary rule, it has done so. In Saucier, the Court found a statute did not confer upon an attorney a prohibited absolute ownership interest in the client's claim prior to his performance of all or substantially all the legal services necessary, but only safeguarded a privilege granted to aid the attorney's collection of a fully earned fee out of the fund which satisfied the client's claim. In City of Baton Rouge v. Stauffer Chemical, the Court found a mandatory attorney fee provision in a statute and its counterpart in parish sales tax ordinances was not a facially unconstitutional infringement of a disciplinary rules' prohibition against a lawyer collecting a clearly excessive fee. Despite such a law, the courts could still inquire into the reasonableness of attorneys' fees. The Court held the statutory provisions did not per se conflict with its exclusive authority to regulate the practice of law, but only when the attorneys fees fixed pursuant to the statute resulted in an excessive or unreasonable fee. The law was subject to the Court's close scrutiny to ensure its constitutional application. Id., 500 So.2d at 401. In Mire v. City of Lake Charles, the Court held a municipal ordinance which levied a graduated occupational license tax on attorneys did not impede the Court's regulation of law practice.
*359 These cases can be distinguished from Wallace and Singer Hutner Levine, Etc., where the statutes directly attempted to regulate the practice of law. By contrast, the purpose behind the ethics code is to ensure a high ethical standard for present and former public servants by implementing these legislative policies and objectives:
B. It is essential to the proper operation of democratic government that elected officials and public employees will be independent and impartial; that governmental decisions and policy be made in the proper channel of the governmental structure; that public office and employment not be used for private gain other than the remuneration provided by law; and that there be public confidence in the integrity of government. The attainment of one or more of these ends is impaired when a conflict exists between the private interests of an elected official or a public employee and his duties as such. The public interest, therefore, requires that the law protect against such conflicts of interest and that it establish appropriate ethical standards with respect to the conduct of elected officials and public employees without creating unnecessary barriers to public service.
LSA-R.S. 42:1101.
The provisions of LSA-R.S. 42:1121 prohibit a "revolving door" of successive government and private employment. This Court determines only the applicability, legality and constitutionality of the statutes enacted; it is not this Court's function to consider the policy or wisdom of the legislature. Chamberlain, 624 So.2d at 879. Only that legislation which interferes with or frustrates this Court's authority to regulate the practice of law is constitutionally prohibited.
The disciplinary rules are mandatory rules for lawyers providing the minimum level of conduct to which an attorney must conform without being subject to disciplinary action. See Louisiana State Bar Ass'n v. Chatelain, 513 So.2d 1178, 1183 (La. 1987); Succession of Cloud, 530 So.2d 1146, 1150 (La.1988). However, attorneys are subject to laws other than the Rules of Professional Conduct, and sometimes those laws relate to their actions as attorneys. A person who receives a license to practice law and adheres to the Rules of Professional Conduct is not insulated from other regulations and conditions under which the license may be used. Mire, 540 So.2d at 955; see also DeSalvo v. State, 624 So.2d 897, 902 (La.1993), cert. denied, ___ U.S. ___, 114 S.Ct. 1067, 127 L.Ed.2d 386 (1994).
A person possessing a law license is not exempt from the duties of citizenship or ordinary state laws. Mire, 540 So.2d at 954. For example, a lawyer's business is affected and limited by local zoning ordinances, yet these regulations do not impede or frustrate this Court's authority over the practice of law. A lawyer who converts and commingles his clients' money may have violated this Court's disciplinary rules but is also subject to the state criminal theft laws. Similarly, an attorney who is a public official or employee is subject to the Rules of Professional Conduct, as well as the ethics code rules which apply to all public servants, as long as the ethics code provisions do not impede or frustrate this Court's authority to regulate the practice of law.
The application of the ethics code's prohibitions does not prevent Midboe from practicing law. Midboe may represent any and all clients except those requiring transactions or appearances before the DEQ for two years following the termination of his public service. He is not precluded from any type of employment arrangement with a firm which does not handle transactions or appearances before the DEQ. He may even work with a firm which handles DEQ matters, as long as he works as an independent contractor and refrains from interoffice communications with other attorneys regarding DEQ transactions. He may assist clients in transactions involving the state legislature, including matters involving environmental legislation. He may also assist clients in transactions involving federal agencies and state administrative agencies other than the DEQ. After two years following his termination of public service, Midboe is not precluded from any type of employment arrangement with a firm.
*360 The American Bar Association Model Rules of Professional Conduct, from which the pertinent part of Rule 1.11 is taken, contemplated the application of other laws in the area of successive government and private employment. Although the Comments to the Model Rules were not adopted by this Court, they are instructive here. The Model Rule Comment provides that a government lawyer is subject, not only to Rule 1.11, but "to statutes and government regulations regarding conflict of interest." The Model Rule Comment also recognized that "statutes and regulations may circumscribe the extent to which the government agency may give consent under this Rule."
This view has found favor with other state courts. In Howard v. State Com'n on Ethics, 421 So.2d 37 (Fla.App.1982), a Florida attorney appealed the finding of an ethics commission that he was engaged in a prohibited conflict of interest by being employed as a school board attorney, as well as being a partner in a law firm which contracted to provide school board legal services. Howard argued, as does Midboe, that the ethics rule interfered with the plenary jurisdiction of the Supreme Court to regulate the practice of law. The Florida appellate court held the statute did not interfere with the court's authority to regulate the practice of law in that the statutes enacted "merely supplement the Canons of Professional Responsibility adopted by the Supreme Court. When an attorney decides to accept public employment, he does so subject to the legislative proscription on his conduct." Howard, 421 So.2d at 39.
Similarly, in Maunus v. Com., State Ethics Com'n, 518 Pa. 592, 544 A.2d 1324 (1988), two government attorneys in Pennsylvania disputed application of the state ethics code's financial disclosure requirements, arguing the requirements were inapplicable to them because the ethical conduct of attorneys was governed solely by the Supreme Court. In acknowledging the Pennsylvania Supreme Court's authority to regulate and discipline the professional class of attorneys, the Court held:
notwithstanding our substantial authority in this area, it is ludicrous to suggest that employers are constitutionally precluded from imposing ethical and professional requirements on their employees, some or all of whom may be attorneys. This is equally true where the employer is the Commonwealth or one of its subdivisions.
Maunus, 544 A.2d at 1326.
Indeed, the Commission has applied the post-employment restrictions of the ethics code to public servants who are attorneys in two instances. In both Board of Com'rs v. Commission on Ethics, supra, and Macmurdo v. Commission on Ethics for Public Employees, 486 So.2d 829 (La.App. 1 Cir.), writ denied, 488 So.2d 188 (La.1986), the Commission found attorneys employed by the government violated provisions of the ethics code rules. In each instance, the appellate court disagreed with the Commission's interpretation of the ethics code rules but raised no question of the ethics code's application.

CONCLUSION
By enacting an ethics code which applies to all public officials and employees, the legislature was not attempting to regulate the practice of law for attorney public servants. The legislature was acting under a constitutional mandate to ensure a high ethical standard for present and former public servants. The ethics code provisions act on attorneys in their primary role as citizens. An attorney who is a public official or employee is subject to the Rules of Professional Conduct, as well as the ethics code which applies to all public servants, as long as the ethics code provisions do not impede or frustrate this Court's authority to regulate the practice of law.
For the foregoing reasons, the judgment of the district court is reversed. The Ethics Commission opinion in Docket No. 94-005 is reinstated.
REVERSED: ETHICS COMMISSION OPINION REINSTATED.
DENNIS, J., concurs with reasons.
DENNIS, Justice, concurring.
I respectfully concur in the constitutional law ruling only. The sole basis for appellate jurisdiction in this case is the issue of the *361 constitutionality of La.R.S. 42:1121. La. Const. Art. V, § 5(D). Having reversed the trial court's erroneous declaration of unconstitutionality, this Court's normal course of action is to remand the case to the proper lower court for disposition of all remaining issues. See BP Oil Co. v. Plaquemines Parish Government, 642 So.2d 1230, reh'g granted (La.1994).
Given the above, combined with the fact that I disagree with the majority's treatment of the procedural issues relating to declaratory and injunctive actions, I concur only in that part of the opinion which reverses the trial court's judgment declaring La.R.S. 42:1121 unconstitutional. I respectfully do not join the balance of the majority opinion.
NOTES
[1] Judge Felicia Toney Williams, Court of Appeal, Second Circuit, participating as Associate Justice Pro Tempore, effective September 1, 1994.

Marcus, J., not on panel. Rule IV, § 3.
[2] LSA-R.S. 42:1121 provides in pertinent part:

§ 1121. Assistance to certain persons after termination of public service
A. No former agency head or elected official shall, for a period of two years following the termination of his public service as the head of such agency or as an elected public official serving in such agency, assist another person, for compensation, in a transaction, or in an appearance in connection with a transaction, involving that agency.
B. General rule for other public employees. No former public employee shall, for a period of two years following the termination of his public employment, assist another person, for compensation, in a transaction, or in an appearance in connection with a transaction in which such former public employee participated at any time during his public employment and involving the governmental entity by which he was formerly employed, or for a period of two years following termination of his public employment, render, on a contractual basis to or for the agency with which he was formerly employed, any service which such former public employee had rendered to the agency during the term of his public employment.
C. No legal entity in which a former public servant is an officer, director, trustee, partner, or employee shall, for a period of two years following the termination of his public service, assist another person, for compensation, in a transaction, or in an appearance in connection with a transaction in which such public servant at any time participated during his public service and involving the agency by which he was formerly employed or in which he formerly held office.
[3] Rule 1.11. Successive Government and Private Employment

(a) Except as law may otherwise expressly permit, a lawyer shall not represent a private client in connection with a matter in which the lawyer participated personally and substantially as a public officer or employee, unless the appropriate government agency consents after consultation. No lawyer in a firm with which the lawyer is associated may knowingly undertake or continue representation in such a matter unless:
(1) The disqualified lawyer is screened from any participation in the matter and is apportioned no part of the fee therefrom; and
(2) Written notice is promptly given to the appropriate government agency to enable it to ascertain compliance with the provisions of this rule.