laKUHN, Judge.
I. THE ISSUES
This appeal raises the issues of whether the trial court erred by: 1) determining that Venezuelan law rather than Panamanian law should be applied to determine the validity of a donation of bearer shares of a corporation, 2) determining the donation was required to be in the form of an authentic scripture, and 3) granting injunctive relief, which required defendants to return corporate funds to bank accounts from which the funds were removed.
II. PROCEDURAL HISTORY
Plaintiff-appellee, Norma Valencia Bartels de Nunez, a Venezuelan citizen and resident, filed suit in Louisiana seeking to be declared a one-half owner of the property of defen *1003 dant-appeUant, Forty One Corporation (“41 Corp.”), a corporation organized pursuant to the laws of Panama, which holds assets located in Louisiana, New York and Venezuela. Plaintiff seeks injunctive relief, an accounting regarding the assets of 41 Corp., and damages arising from the alleged misappropriation of shares and assets of the corporation by her brother, defendant-appellant Eduardo Felipe Valencia Bartels, a Venezuelan citizen and resident. Plaintiff contends her father, Julio Valencia Cardoze, bequeathed 41 Corp. to her and her brother. Plaintiff asserts the funds of 41 Corp., totaling approximately twenty million dollars, are on deposit in accounts at various banks, including defendant banks, First State Bank and Trust Company and First State Bank of Bogalusa, collectively referred to as the “Bank.”[2] Felipe contends he is the sole owner of all of the bearer shares of stock of 41 Corp. based on an inter vivos donation of the stock to him by Julio. Norma claims the purported manual donation is invalid because it does not comply with Venezuelan law requiring the donation to be made by authentic scripture.
Based on allegations that Felipe transferred 41 Corp. assets from various bank accounts in the United States to Felipe’s personal accounts in other countries, the court ^ordered a writ of sequestration to protect the funds on account at the Bank. After a trial on the merits, the court signed a judgment on July 31, 1995, recognizing that Norma and Felipe each became owners of one-half of the shares of 41 Corp. on November 15,1989, the date of their father’s death. The judgment ordered that the writ of sequestration previously issued by the court was to be maintained until Felipe and 41 Corp. complied with the terms of the July 31, 1995 judgment. The judgment also: 1) enjoined Felipe and 41 Corp. from removing any assets from any account of 41 Corp. until they had complied with all terms of the judgment, and 2) ordered Felipe to a) deliver one-half of the outstanding stock certificates of 41 Corp. to Norma, b) return all funds and assets of 41 Corp. removed by him or at his request or direction to the financial institution where such funds or assets were maintained, with legal interest from the date taken, e) render to Norma an accounting for all transactions of 41 Corp. entered into under the direction of Felipe, and d) take all steps to insure that 41 Corp. and all financial institutions in which 41 Corp. maintains an account, or has any monies or assets, recognize Norma’s one-half ownership interest in the stock of the corporation.
The pertinent facts of this dispute are set forth in the trial court’s July 31,1995 reasons for judgment (attached as Appendix A). On appeal, Felipe contends the trial court erred: 1) in applying Venezuelan law rather than Panamanian law to determine the requirements for a valid transfer of the bearer shares of a Panamanian corporation; 2) by requiring Felipe to prove Julio Valencia’s donative intent in transferring the bearer shares to Felipe; and 3) in ordering Felipe to return transferred funds to 41 Corp. with legal interest from the date of the transfers.
III. ANALYSIS
A. Choice of Law
Appellants contend the court’s choice of law analysis is flawed because it failed to examine the respective policies and interests of the Republic of Panama (“Panama”) and Venezuela and, more particularly, failed to give consideration to the legal and economic | interests of Panama. Appellants assert Panama is the state whose policies would be most seriously impaired if its law were not applied to the issue of the validity of the donation. Appellants specifically argue the court improperly disregarded testimony regarding the importance of the free transferability of Panamanian bearer shares on an international basis to the economy of Panama. Appellants urge that pursuant to Louisiana’s choice of law rules, the validity of the donation of 41 Corp.’s bearer shares must be determined pursuant to Panamanian law, asserting that Panama’s policies will suffer ser *1004 ious impairment if the law of another nation is applied.
La.C.C. art. 3515 provides:
Except as otherwise provided in this Book, an issue in a case having contacts with other states is governed by the law of the state[3] whose policies would be most seriously impaired if its law were not applied to that issue.
That state is determined by evaluating the strength and pertinence of the relevant policies of all involved states in the light of: (1) the relationship of each state to the parties and the dispute; and (2) the policies and needs of the interstate and international systems, including the policies of upholding the justified expectations of parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state. (Footnote added.)
La.C.C. art. 3517 provides:
Except as otherwise indicated, when the law of another state is applicable under this Book, that law shall not include the law of conflict of laws of that state.
Nevertheless, in determining the state whose law is applicable to an issue under Articles 3515, 3519, 3537, and 3542, the law of conflict of laws of the involved foreign states may be taken into consideration.
In addressing the conflicts of law issue, the trial court considered La.C.C. arts. 3515 and 3517 and found that pursuant to article 3517, the conflicts laws of Venezuela and Panama should be considered due to the minimal contacts this case has with the state of Louisiana. Although the court was not required to consider the conflicts rules of Venezuela or Panama, the court clearly had the discretion to do so pursuant to La.C.C. art. 3517. Wejgfind no abuse of that discretion, particularly in light of the fact that
Louisiana’s only involvement with the parties of this suit is the presence of corporate funds in a Louisiana bank. Particularly since this case involves Venezuelan residents and the alleged donation occurred in Venezuela, we find the trial court properly considered Venezuelan law regarding conflict of laws.[4]
Dr. Gonzalo Parra-Aranguren, who was qualified as an expert in Venezuelan private international law, testified that the Bustamente Treaty, an international treaty between Venezuela and Panama, must be considered according to Venezuelan private law. He explained the treaty was approved by the Venezuelan Congress with forty-four articles of the treaty being reserved, which means they are not enforced in Venezuela. The remainder of the provisions are in force in relations between Venezuela and Panama, which ratified the entire treaty.
Parra testified that pursuant to article 141 of the Bustamente Code, donations inter vi-vos are governed by the same law governing contracts. He explained the Bustamente Code regulates contracts regarding two aspects, the formal requirements and the substantive requirements. In order for the donation to be valid, it must be valid both formally and substantively.
With respect to the law governing the formalities of a contract, the law of the place of the performance of the contract and the law of the place where the contract was executed are considered. Parra explained since the alleged donation was entered into in Venezuela and the shares were delivered in Venezuela, Venezuelan law would govern the formal requirements of the donation.
Regarding the substantive requirements of contracts and donations, the Bustamente Code directs the law chosen by the parties is applicable. Parra explained if the parties have 16not made a choice regarding the applicable law, the code prescribes that the per *1005 sonal law, i.e., the law of the domicile or the law of the nationality of the person, should be taken into consideration. When there is no common personal law, it is appropriate to consider the place in which the contract was entered. Parra’s opinion was based on the assumption that the parties to the donation had not chosen a particular law to apply to the transaction. In this case, Parra determined the law of the nationality of the parties and the law of the domicile of the parties to be Venezuela.
Parra explained the Bustamente Code is rigid with respect to formalities and requires parties to a contract to comply with the law of the place of the celebration of the contract. If the parties choose to have Panamanian law apply to a contract, that selection of law applies only to the substantive requirements of the contract and does not apply to the law of formalities. In other words, the code provides the requirements regarding the law of formalities cannot be waived by the parties.
Dr. Gilberto Boutin, an expert in private international law, including the international law of Panama, testified he was in partial disagreement with the opinion of Dr. Parra regarding this case. He stated Parra did not consider a fundamental element, the law that governs Panamanian corporations. Because the transfer dealt with a transfer of bearer shares of a Panamanian company, Boutin believed the bearer shares should be treated as negotiable instruments subject to the law of their creation or issuance. Boutin stated that since the parties chose Panama as the domicile of the corporation pursuant to the articles of incorporation, Panama law should govern the transfer of the shares. He explained that the Bustamente Code provides that the laws governing stock companies and merchant companies are regulated by their articles of incorporation. In his opinion, since 41 Corp. chose Panama as its domicile, Panamanian law should govern transactions of the corporation.
Appellants contend the trial court failed to give appropriate consideration to the legal and economic interests of Panama in making the choice of law determination, ^asserting that the trial court’s ruling undermines the “unique characteristic of freely transferable and highly confidential bearer shares” and jeopardizes the “global use of Panamanian corporations as vehicles to hold assets.” Appellants claim Panama’s policies would suffer serious impairment if the court were to apply the law of some other nation.
We do not agree that the court failed to adequately consider the legal and economic interests of Panama by applying the Busta-mente Code to determine which country’s law should control the issue of the validity of the donation of the bearer shares. Since the conflicts rules set forth in the Bustamente Code reflect Venezuela and Panama’s delineation of the territorial scope of each country’s policies, the code should be considered a very helpful factor in “evaluating the strength and pertinence of ... [these] policies.” See Revision Comment (d) of La.C.C. art. 3517. We find the Bustamente Code presents an inherent compromise of the policies of both Venezuela and Panama and was properly considered by the trial court.
Pursuant to the provisions of the Busta-mente Code, we find no error in the trial court’s decision to apply Venezuelan law to determine the validity of the donation. We find that decision was properly made based on the provisions of the Code and on Dr. Parra’s testimony regarding the application of the Bustamente Code to the facts of this ease. As the trial court apparently found, we also find the testimony of Dr. Parra in support of the application of Venezuelan law to be more compelling than the testimony of Dr. Boutin in support of the application of Panamanian law to determine the validity of the donation of the bearer shares. We do not believe the fact that the donation involved bearer shares of a Panamanian corporation implies that the parties to the donation intended for Panamanian law to govern the transaction or that this fact is a determinative factor pursuant to the provisions of the Bustamente Code.
B. Application Of Venezuelan Law To Issue Of Validity Of Donation
Dr. Jose Luis Aguilar Gorrondona, an expert in the civil law of Venezuela, | gtestified *1006 that Venezuelan Civil Code art. 1439[5] (“Civil Code”), pertaining to donations, requires the formality that a declaration of the donor and an acceptance by the donee be made by authentic scripture, a writing executed in front of a registrar, a notary, or an employee that has the attribution of giving public faith. He acknowledged there is an express exception when the donation involves a personal asset with a value of less than 2000 bolivars, which he estimated was the equivalent of about $12.00. Since the value of the donation in this case was far in excess of that amount, he explained this exception was not pertinent.
Dr. Aguilar also recognized Civil Code art. 794[6] provides that possession of personal assets and bearer shares produces in favor of third parties of good faith the same effect as legal ownership. Dr. Aguilar explained that those persons who enter into a contract are considered to be parties and a person who receives shares by a donation would not be considered a third person pursuant, to this article. In his opinion, Felipe could not invoke the provisions of this article against his sister because Felipe was a party to the donation.
In Dr. Aguilar’s opinion, the Venezuelan Commercial Code (“Commercial Code”), art. 297, which provides for the transfer of the ownership of bearer shares by delivery alone, is not applicable to the transfer of bearer shares in this ease. He considered the donation to be outside of the specialty area of law addressed by the Commercial Code, because the Commercial Code applies to the sale and purchase of shares, not to the ^donation of shares. He explained article 3 of the Commercial Code sets forth the presumption that the relations regulated by the specialty code involve commercial relations between merchants, and since it is against the idea of commerce to give and not receive, a donation is not considered to be a commercial transaction.
Dr. Oswaldo Paez-Pumar, an expert in Venezuelan civil law, commercial law and private international law as it relates to Venezuelan commercial law and civil law, testified that in his opinion the transfer of the bearer shares should be governed by Commercial Code art. 297 because the bearer shares were the subject of the transaction. He opined art. 297 applies to any transfer of bearer shares, not only sales transactions. However, on cross-examination, Dr. Pumar acknowledged that the Commercial Code deals with commercial transactions and acts of merchants, that he did not consider either Felipe or Julio to be a merchant, and that he did not consider the donation to involve an act of commerce. However, he maintained that the specific rule of the Commercial Code should apply even if the donation was not a commercial transaction. Dr. Pumar also testified that pursuant to Venezuelan Civil Code art. 794, Felipe, as possessor of the bearer shares, is presumed to be the owner until someone shows he is in bad faith.
The trial judge noted that, without reaching the issue of the applicability of the Commercial Code[7], he was inclined to agree with Dr. Aguilar’s opinion, that by its own terms, the Commercial Code had no applicability to a donation by a father to his son. The trial judge also found Civil Code art. 794 provided for a rebuttable presumption that a posses *1007 sor is presumed to be the owner and that the article “must be meant to protect a third party dealing with a (sic) such a possessor.” The trial court concluded because Felipe was an actual party to the transaction in question and Julio was the actual owner of the shares of stock, article 794 did not apply to this situation.
| ipRegarding the issue of the applicability of the Commercial Code, we find the reasoning of Dr. Aguilar to be more persuasive than the reasoning of Dr. Pumar. In accord with Dr. Aguilar’s opinion, we conclude Commercial Code art. 297 does not govern the donation of the bearer shares in this case. We also find the trial court’s findings on the issue of the applicability of the Civil Code art. 794 to be sound and supported by the expert testimony of Dr. Aguilar. With respect to the application of Civil Code art. 1439, Dr. Aguilar testified that if Norma claimed the donation of shares was not in proper form, Felipe had the burden of proving the donation had been made by authentic scripture. Because we find Felipe failed to establish the bearer shares were transferred by authentic scripture, we conclude the purported donation of the bearer shares is invalid.[8]
C. Propriety of the Injunctive Relief Granted by the Trial Court .
Appellants claim the trial court’s mandatory injunction ordering Felipe to “return all funds and assets of Forty One Corporation removed by him or at his request or direction to the financial institution where such funds or assets were maintained, with legal interest from the date taken” is improper. Appellants contend the court’s order is “a disguised substitute for the derivative claim which [Norma] asserted” but failed to prove. Appellants urge Panamanian law should govern the suit. Appellants also assert mandatory injunctions are not favored and should rarely be issued except upon the clearest equitable grounds. Alternatively, appellants contend that if the court maintains the order to return the money, the imposition of interest at the legal rate on the full amount of that obligation is not proper because 1) even based on appellee’s view of the case, Felipe is entitled to one-half of the funds that were transferred, 2) the trial court did not have a legal basis for imposing legal interest from the date of the transfer of funds Inrather than from the date of judicial demand, 3) imposing interest at the legal rate would be excessive and result in overcompensation to 41 Corp.
Plaintiff filed this suit seeking a declaratory judgment recognizing her to be an owner of 41 Corp.La.C.C.P. art. 1878 provides, in pertinent part, “Further relief based on a declaratory judgment or decree may be granted whenever necessary or proper.” Pursuant to this article, we find a trial court has great discretion in fashioning declaratory judgment relief, including mandatory injunctions or other coercive relief. See Midboe v. Commission on Ethics for Public Employees, 94-2270 (La. 11/30/94), 646 So.2d 351, 356; Chauvet v. City of Westwego, 599 So.2d 294, 296 (La.1992); Gurvich v. New Orleans Private Patrol Service, Inc., 578 So.2d 195, 198 (La.App. 4th Cir.1991). Regardless of whether plaintiffs suit is considered to be a shareholder’s derivative action or a suit brought in her individual capacity, we conclude the court had the power to order the mandatory injunctive relief as supplemental relief pursuant to La.C.C.P. art. 1878. Plaintiff proved she was entitled to such relief by establishing the invalidity of the donation and that corporate funds have been transferred by Felipe. We find the relief awarded was equitable and necessary to give effect to the declaratory judgment finding Norma to be an owner of 41 Corp.
Regarding the issues raised by appellants pertaining to the award of legal interest, we conclude the trial court did not abuse its broad discretion in awarding legal interest from the date of the transfers on those sums that were transferred. We believe this *1008 award was appropriate and that such an award was the only manner in which the court could accomplish the obvious and justifiable objective of returning the corporation to approximately the same financial posture it was in at the time of Julio Valencia’s death. See Gurvich v. New Orleans Private Patrol Service, Inc., 578 So.2d at 197-198.
IV. CONCLUSION
For the above reasons, we find the trial court properly applied Venezuelan law rather than Panamanian law to determine the validity of the donation of the bearer shares |i2of 41 Corp. Since the donation did not meet the form requirements of Venezuelan Civil Code art. 1439, the donation was invalid. The trial court properly concluded that Felipe and Norma each became owners of one-half of the shares of 41 Corp. on November 15, 1989, the date of Julio Valencia’s death. We further find the mandatory injunctive relief ordered by the trial court, including the order requiring Felipe to return 41 Corp. funds to the financial institution where such funds were maintained, with legal interest from the date taken, is appropriate mandatory injunctive relief warranted by the circumstances of this case. Accordingly, we affirm the judgment of the trial court. Costs of this appeal are assessed to appellant, Eduardo Felipe Valencia Bartels.
AFFIRMED.

. The petition states the Bank is a banking corporation with its principal place of business in Washington Parish, Louisiana, and is named as a defendant solely because it holds property in which plaintiff claims an ownership interest or right of possession.

. La.C.C. art. 3516 defines the word “state” as "the United States or any state, territory, or possession thereof ... and any foreign country or territorial subdivision thereof that has its own system of law.”

. Appellants contends Venezuela merely has "contacts” with this case, but that "contacts” are no longer relevant under Louisiana's new conflicts rules. While we agree that Louisiana’s conflict laws do not focus on determining which state has the most contacts with the parties in deciding which state’s law should be applied to a particular issue, we believe a state’s contacts with a particular matter should be considered in determining which foreign states are "involved” for the purpose of applying La.C.C. art. 3517.

. The English translation of article 1439 provides:
In order for donations to be valid, they must be made in authenticated form and their acceptance should be delivered in the same manner; nevertheless, as concerns real property, such acts shall not be legally binding as to third parties until both acts have been recorded.
When the donation involves personal property (movables), the value of which does not exceed 2,000 bolivars, no writing of any kind shall be required.

. The English translation of Venezuelan Civil Code art. 794 provides:
With respect to assets that are personal by their nature and bearer shares, possession produces, in favor of third parties of good faith the same effect as legal ownership. This position does not apply to all personal property or assets.

.The trial judge pretermitted the issue of whether the Commercial Code was applicable to a donation from a father to a son. The court found that that even if the Commercial Code was applicable, defendants were required to prove donative intent under the substantive requirements of the Venezuelan Civil Code in order to establish a valid donation.

. Since we find the donation was invalid because it did not comply with the form requirements of the Venezuelan Civil Code, we pretermit appellants’ argument that the court erred in placing the burden of proof on Felipe to prove Julio had donative intent when he transferred the bearer shares. We also note the parties do not dispute that in the event the donation of the bearer shares is found to be invalid, Felipe and Norma are owners of equal interests of 41 Corp. pursuant to the provisions of Julio Valencia's will.