Dear Mr. Comeaux:
You requested an opinion of our office and submitted information gathered by Mr. Steven Jankower, Assistant City/Parish Attorney. The question posed is whether city-parish employees must, as a condition of their employment, take the oath of office required by R.S. 42:52. The information submitted indicated that, apparently through oversight, many city-parish employees have been employed in the classified civil service beyond the probationary period and appear to have gained civil service tenure but yet have not taken the specified oath of office. The information also notes the overall tenor of the statutory part comprising R.S. 42:51 et seq.
and points to the disfavor with which some U.S. Supreme Court jurisprudence has looked upon "loyalty oaths."
In the absence of a specific denial of power to the legislature by the constitution, the legislature's power to enact legislation is plenary. In the exercise of the entire legislative power of the state, the legislature may enact any legislation that the State Constitution does not prohibit, and in order to hold legislation invalid under the State Constitution, it is necessary to rely on and carry the burden of clearly showing some particular constitutional provision that deprives the legislature of the power to enact such statute. Bd. of Comm'rs of Orleans LeveeDistrict v. La. Dept. of Natural Resources, 496 So.2d 281, 286-287
(La. 1986); In the matter of American Waste Pollution ControlCo., etc., 588 So.2d 367, 373 (La. 1991); Radiofone, Inc. v. Cityof New Orleans et al., 93-0962 (La. 1/14/94), at pp. 2, 5,630 So.2d 694, 696, 697 (La. 1994); and the authorities cited therein. Although this principle has existed in Louisiana for generations, it is especially true and applicable to the 1974 Constitution. Justice Calogero and Justice Tate (who was the state Supreme Court's representative delegate to the state's Constitutional Convention of 1973), in their concurring and dissenting opinion inEdwards v. Parker, 332 So.2d 175 (La. 1976), approvingly set forth the quote and explained:
"As stated by Professor W. Lee Hargrave of the Louisiana State University Law School and a leading figure in the drafting of the 1974 constitution, see 36 La.L.Rev. 533 (1975):
 `Though Louisiana courts have accepted and applied the principle that a state legislature possesses plenary power to do anything not prohibited by the constitution even absent a grant of power, the fact that the 1921 constitution contained so many grants of power, often grants coupled with explicit or implicit limitations, resulted in the general principle being applied less often than it might otherwise have been. The 1974 constitution, deliberately short, intentionally concise, and knowingly avoiding grants of power, will require application of the principle more often. The convention used the principle as its basic starting point, and a narrow construction of legislative power under the document would thwart its purpose of giving more flexibility to the legislature.'"
Id., 332 So.2d at 201-202.
In addition, state and local officials charged with faithful execution of the laws generally do not have the constitutional power themselves to declare such laws unconstitutional for the purpose of ignoring or refusing to enforce them but must see to their execution in as proper and constitutional a manner as possible. This rule is the same for administrative agencies charged with the faithful execution and enforcement of certain laws through the administrative process; generally, they, too, lack the power to declare statutes unconstitutional. The courts of this state have consistently held that, unless a specific provision of the constitution provides otherwise, administrative agencies generally do not have the authority to determine questions of constitutionality. This rule derives from the constitutional vesting of the judicial power in the Judiciary and from the constitutionally-required separation of executive, legislative, and judicial powers; the state supreme court succinctly explained this rationale in Midboe v. Commission onEthics for Public Employees, 94-2270 (La. 11/30/94), 646 So.2d 351, and also cited supporting authorities, as follows:
 `The determination whether a statute is unconstitutional is a purely judicial function. State v. Board of Sup'rs of Elections, 186 La. 949, 173 So. 726 (La. 1937). The judicial power of the state is constitutionally vested in the courts. La. Const. Art. 5 Sec. 1. The Commission is not a court but is an administrative agency in the executive branch of state government. See Bagert v. Bd. of Ethics for Elected Officials, 594 So.2d 922 (La.App. 1 Cir. 1992). An administrative agency does not have the authority to determine the constitutionality of statutes. See Church Point Wholesale Beverage v. Tarver, 614 So.2d 697, 702 n. 8 (La. 1993), and Red River Coors, Inc. v. McNamara, 577 So.2d 187 (La.App. 1 Cir.), writ denied, 582 So.2d 1306 (La. 1991) (Board of Tax Appeals does not have authority to decide the constitutionality of statutes); Bell v. Dept. of Health and Human Resources, 483 So.2d 945, 947 n. 1 (La. 1986), cert. denied, 479 U.S. 827, 107 S.Ct. 105, 93 L.Ed.2d 55 (1986), and Appeal of Brisset, 436 So.2d 654 (La.App. 1 Cir.), writ denied, 441 So.2d 749 (La. 1983) (Civil Service Commission does not have the authority to decide the constitutionality of statutes). Thus, the district court, and not the Commission, had jurisdiction to rule on the constitutionality of the statutes.'
Midboe, supra, at p. 7, 646 So.2d at 355.[1]
Accordingly, unless a statute has been declared by a court of law to be unconstitutional, it cannot be simply ignored by state or local officials (or members of administrative boards and commissions) who disagree with the statute's policy; rather, the law must be obeyed.
Originally enacted with and within Part II of Chapter 2 of Title 42 of the Louisiana Revised Statutes, comprising R.S. 42:51-58, and itself, standing alone, amended-and-reenacted twice subsequently, R.S. 42:52 requires that all public employees who owe allegiance to the United States file a written declaration in the form of the following oath or affirmation:
 "I (A.B.) do solemnly swear (or affirm) that I will support the constitution and laws of the United States and the constitution and laws of this State; and I will faithfully and impartially discharge and perform all the duties incumbent upon me as. . ., and according to the best of my ability and understanding. So help me God."
This oath or affirmation (written declaration) is virtually identical to the oath of office required of state officers by La. Const. (1974) Art. 10, Section 30, and appears by itself to be the usual kind of positive "support" oath that has been squarely upheld in U.S. Supreme Court and federal jurisprudence. See, for example, Knight v. Bd. of Regents of the Univ. of the State ofN Y, 269 F. Supp. 369 (USDC N.Y. S.D. 1967) affirmed 390 U.S. 36
(1968); Ohlson v. Phillips, 304 F. Supp. 1152 (USDC Colo. 1969) affirmed 397 U.S. 317 (1970) rehearing den. 397 U.S. 1081 (1970);Law Students Civil Rights Research Council, Inc. v. Wadmond,401 U.S. 154 (1971); and Cole v. Richardson, 405 U.S. 676 (1972). It does not appear to be the kind of oath requiring disclosure or avoidance of membership in any particular organizations or associations or the affiant's determination by some form of prescient knowledge precisely what is prohibited and what he is not supposed to be doing, the kind of oaths which have been invalidated in such cases as Wieman v. Updegraff, 344 U.S. 183
(1952); Shelton v. Tucker, 364 U.S. 479 (1960); Baggett v.Bullitt, 377 U.S. 360 (1964) (oath combining both support language and a declaration that affiant is not a "subversive person" within the meaning of state statutes); Elfbrandt v.Russell, 384 U.S. 11 (1966) (oath superficially in form of support oath but with statutory penalty for an affiant's having taken oath while knowing member of Communist Party, any of its subordinate organizations, or any organization advocating unconstitutional overthrow of government); and Keyishian v. Bd. of Regents of Univ.of the State of N.Y., 385 U.S. 589 (1967) (university faculty members required either to sign certificate or answer question(s) under oath about membership in Communist Party or other organizations advocating or teaching doctrine of forcible overthrow of government). Also, see generally 63C AmJur2d "Public Officers and Employees" Sections 124-127. The application of the oath to those owing allegiance to the United States is to accommodate federal jurisprudence which has held that aliens and foreign nationals cannot be prohibited as a class from all city-parish governmental employment. See Sugarman v. Dougall,413 U.S. 634 (1973) and In Re Griffiths, 413 U.S. 717 (1973).
Thus, the oath required by La. R.S. 42:52 appears to be valid precisely because it does not impinge upon the affiant's constitutionally-protected associational and other freedoms and has no adverse effect on them. Rather, it merely requires a solemn declaration by the public officer or employee that he will endeavor to perform his public duties faithfully and in a manner that is not only mindful of the understanding that our government is, at its foundation, one of law, not men, but also respectful of the constitutional and civil rights of the individual members of the public with whom he must deal in the performance of those public duties.
A willful and obstinate refusal to take the oath or affirmation (written declaration) of office, after receiving the explanation and assurance that one's constitutionally-protected associational and other freedoms are not thereby impaired, amounts essentially to an express reservation by a public officer or employee of the personal option to commit malfeasance, since his failure to conform to the standard of conduct required by the oath of office taken by him would constitute malfeasance. State v. Perez,464 So.2d 737 (La. 1985); State v. Melerine, 236 La. 881, 919-927,109 So.2d 454, 467-470 (La. 1959); State ex rel. Jones v. Doucet,203 La. 743, 758-759, 14 So.2d 622, 627 (La. 1943); Succ. of Serres,135 La. 1005, 1020-1021, 66 So. 342, 347 (La. 1914); State v.DeVille, 94-0241 (La.App. 4th Cir. 10/27/94), pp. 5-8,644 So.2d 1117, 1120-1123; State v. Coker, 625 So.2d 190 (La.App. 3rd Cir. 1993) writ den. 624 So.2d 1204 (La. 1993); City of St. Martinvillev. Norman, 577 So.2d 831 (La.App. 3rd Cir. 1991) writ den.581 So.2d 692 (La. 1991); State v. Perret, 563 So.2d 459 (La.App. 1st
Cir. 1990).
Thus, a knowing refusal to take the legally prescribed oath of office presents clear evidence of a predisposition to malfeasance and a direct impairment to the dependability needed for efficient and trustworthy public service. This conclusion appears to have been actually integrated into La. R.S. 42:52 as a "legislative fact,"[2] inasmuch as the statute mandates, in its Subsection "A," the taking of the oath or affirmation of office as a condition of public employment and expressly and specifically requires, in its Subsection "B," the discharge of any public employee who has not filed the oath or affirmation of office (written declaration) within fifteen days after first being temporarily employed.
Despite this statutory mandate, you inform us that, after entering upon the office of Mayor, you have learned that public employees of the Lafayette Consolidated City-Parish have been regularly employed in the past without having filed the required written declaration containing the oath or affirmation of office. However, from the circumstances described, the failure of these employees to have done so has not been willful or contumacious but rather the result of lapses by past administrations to process these written declarations as an integral part of the employment process. Now, of course, you yourself having taken an oath of office as Mayor and being charged with faithful execution of state laws and ordinances are faced with the problem of enforcing compliance with the statute by relatively long-time city-parish employees, and you have asked, as a part of your inquiry, how you should proceed.
From the situation described to us, the employees were never actually given a real opportunity to execute the written declaration containing the oath or affirmation of office required by La. R.S. 42:52. In our opinion, all employees should be given notice, the proper forms containing the written declaration, and a reasonable time within which to complete and file same. The City-Parish human resource (personnel) office should assist them in completing the task, as is done on the state level (in state departments and offices). La. R.S. 42:52 allows fifteen days, and that period appears to provide a reasonable opportunity after notice to accomplish the required filing.
The statute requires that those employees who refuse to take the oath or affirmation of office and file the required written declaration be discharged after that period. Nevertheless, any employee who has completed the probationary period and otherwise qualified for tenure in his position, whether classified or unclassified civil service, would appear to have a due process property interest in his continued employment and cannot be summarily discharged without notice and the opportunity for a hearing to determine, among other things, that the failure to file the required written declaration is, in fact, a willful and substantive refusal and not some oversight or technical administrative problem beyond his control. Although intended for other, more complicated and detailed statutory violations of a substantive nature, the procedures set forth in La. 42:57-58 may be used to provide procedural due process to such employees; however, we cannot emphasize enough that the real import of using such a procedure in these cases involving only the execution of the written declaration required by La. R.S. 42:52, should be a thorough and convincing explanation and assurance that executing this written declaration does not impinge on the employees' own constitutionally-protected associational and other freedoms and has no adverse effect on them and that this oath or affirmation of office is merely a solemn declaration that public employees will refrain from deliberate malfeasance and endeavor to perform their public duties faithfully and in a manner that is both mindful of the understanding that our government is, at its foundation, one of law, not men, and respectful of the constitutional and civil rights of the individual members of the public with whom they must deal in the performance of those public duties.
Employees who have otherwise completed the qualifications for tenured positions in the classified civil service should probably be treated as permanent classified civil service employees, even though they have never met the fundamental employment requirements of La. R.S. 42:52. See, for example, Wallace v. Shreve MemorialLibrary, 97 F.3d 746 (U.S. App. 5th Cir. 1996) (for due process purposes, parish library technician considered permanent classified civil service employee and thus entitled to due process before dismissal from her job, even though she had never taken competitive civil service examination or otherwise complied with civil service requirements). Those employees having tenured (permanent) positions in the classified civil service system have, of course, an independent right to appeal to the appropriate civil service commission any discharge from employment for failure to comply with the statutory duty to take the oath or affirmation of office and file the written declaration containing same; however, if the failure to comply is willful and knowing, the substance of the appeal will, in our opinion, be meritless, since reserving the personal option to commit malfeasance by refusing to take the oath or affirmation of office which itself creates the standard to which the public employee's conduct must conform to avoid malfeasance, is a direct impediment to the dependability needed for efficient and trustworthy public service. The civil service commission cannot declare La. R.S. 42:52 unconstitutional and ignore its clear mandate. Appeal of Brisset, supra. A willful violation of the statute and obstinate refusal to obey a city-parish supervisor and/or appointing authority seeing to the faithful execution of the statute and ordering compliance with it, constitutes direct insubordination. Moreover, the statutory duty to take the oath or affirmation of office and file the statutorily-required written declaration, in our opinion, is not unlike the domiciliary requirements of the ordinances adopted by the city council in New Orleans Firefighters Association Local632, AFL-CIO v. City of New Orleans, 590 So.2d 1172 (La. 1991) andThe Police Association of New Orleans v. City of New Orleans, 94-1078 (La. 1/17/95), 649 So.2d 951; such does not fall within the exclusive powers expressly or impliedly granted by the state constitution or the Lafayette City-Parish home rule charter[3]
to the applicable civil service commission and is unrelated to the promotion of public employees on the basis of merit, fitness, and qualifications. Any attempted adverse ruling by a civil service commission on the merits of such an appeal to the contrary should be appealed to the courts for reversal.
We trust that this opinion has adequately answered your request concerning the oath or affirmation of office required by La. R.S.42:52. Accordingly, this opinion involves only the statutory requirements set forth by La. R.S. 42:52, which we believe is modeled upon La. Const. (1974) art. 10, § 30 (and its predecessor provision of earlier constitutions from which it was drawn), and which has, in fact, been amended and reenacted twice as a stand-alone section of law and, therefore, can stand alone and is severable from any other surrounding section of law mandating different requirements. Specifically, we have not commented upon and have not given our opinion concerning La. R.S. 42:54. Please do not hesitate to contact us if you need any further assistance with this or any other legal question or advice.
Very truly yours,
 RICHARD P. IEYOUB Attorney General
 By THOMAS S. HALLIGAN
Assistant Attorney General
RPI/TSH/sfj
[1] Although Midboe was later abrogated in Transit Management ofSoutheast Louisiana, Inc. v. Commission on Ethics for PublicEmployees, 96-1982 (La. 12/2/97), 703 So.2d 576, on other grounds dealing with the justiciability of mere advisory opinions, the explanation of the rule that administrative agencies generally do not have the power to declare statutes unconstitutional, unless the constitution specifically provides otherwise, remains proper.See, for example, the concurring opinion of Justice Dennis inMidboe, supra, 646 So.2d at 360.
[2] See La. C.E. art. 201(A), basically following the model set by Rule 201(a) of the Federal Rules of Evidence, and see "Note to Subdivision (a)" of the Advisory Committee Notes to the Federal Rules of Evidence. While reference there is made to the judge-made law of a common law jurisdiction, in Louisiana where the source of law as between the legislative and judicial branches comes from legislation enacted by the legislative branch (per La. Rev. Civil Code arts. 1 and 2), the application is primarily to legislation.
[3] We have reviewed the appropriate provisions of the Lafayette City-Parish Home Rule Charter, which was provided to us, and find no essential difference between them and the state constitution in respect to the subject matter of this opinion.