782 So.2d 582 (2001)
Christa DUPLANTIS
v.
LOUISIANA BOARD OF ETHICS.
Breazeale, Sachse, & Wilson, L.L.P.,
v.
Louisiana Board of Ethics.
Nos. 2000-CC-1750, 2000-CC-1956.
Supreme Court of Louisiana.
March 23, 2001.
*583 Jude C. Bursavich, Anthony T. Caruso, Gordon A. Pugh, Andrew T. McMains, Counsel for Respondent (No. 2000-CC-1956).
Charles J. Fulda, IV, Carolyn A. McNabb, Ramona N. Wallis, Danna E. Schwab, Counsel for Respondent (No. 2000-CC-1750).
Jennifer G. Magness, Maris L. McCrory, R. Gray Sexton, Counsel for Applicant.
VICTORY, Justice.
We granted writs in these two unrelated cases, consolidated for oral argument, to consider whether it was proper for the court of appeal to have reviewed advisory opinions issued by the Louisiana Board of Ethics (the "Board"). After reviewing the record and the applicable law, we hold that the provision of La. R.S. 42:1142 which provides that "[a]ny advisory opinion issued to any person or governmental entity by the board or panel ... is subject to the supervisory jurisdiction of the appellate court ..." is unconstitutional; therefore, the appellate courts are without jurisdiction to review such advisory opinions.

FACTS AND PROCEDURAL HISTORY

Duplantis v. Board of Ethics
On August 30, 1996, Christa Duplantis, through the Assistant Attorney for the Terrebonne Parish Consolidated Government, sought an advisory opinion from the Louisiana Board of Ethics. The substance of that request was as follows:
I have been requested by Council member, Christa Duplantis, to obtain an opinion from the Board of Ethics for Elected Officials regarding her potential employment with two local hospitals.
Christa Duplantis was elected in 1995 to serve as a Terrebonne Parish Consolidated Government council member for a four year term which began in January 1996. Christa Duplantis is a Registered Nurse who desires to obtain employment with the Terrebonne General Medical Center ("TGMC") or the Leonard Chabert Medical Center ("LCMC"). TGMC is owned and operated by Hospital Service District No. 1 of the Parish of Terrebonne ("hospital district"). LCMC is a State owned and operated facility.
*584 Particularly, Duplantis wanted the Board's opinion as to whether such employment would be prohibited by La. R.S. 42:1113(A). That statute provides, in pertinent part:
No public servant ... or member of such a public servant's immediate family, or legal entity in which he has a controlling interest shall bid on or enter into any contract, subcontract, or other transaction that is under the supervision or jurisdiction of the agency of such public servant.
La. R.S. 42:1113(A).
On October 7, 1996, the Board of Ethics responded with Advisory Opinion 96-147 which contained two principal conclusions. First, the Board concluded that La. R.S. 42:1113(A) would prohibit Duplantis from providing nursing services to Terrebonne General because it was part of the Terrebonne Parish Consolidated Government. Second, the Board found that the Code of Ethics would not prohibit Duplantis from seeking employment from Leonard Chabert because it was an agency of the state, not an agency of Terrebonne Parish Consolidated Government. On November 12, 1996, Duplantis applied for a writ of certiorari from the First Circuit Court of Appeal pursuant to La. R.S. 42:1142(A) as it read at that time.[1]
In 1997, while the case was pending before the First Circuit, this court handed down its original opinion in Transit Management of S.E. La. v. Commission on Ethics for Pub. Emp., 96-1982, p. 2 (La.12/2/97), 703 So.2d 576, 577 [hereinafter TMSL], which found that an advisory opinion was not a "preliminary, procedural, or intermediate action" within the meaning of La. R.S. 42:1142(A). Consequently, this court reasoned: "There is no constitutional or legislative authority for judicial review of an advisory opinion rendered by the [Board of Ethics]." Id. Following that original opinion in TMSL, the First Circuit dismissed Duplantis's writ on December 30, 1997. See Duplantis v. Board of Ethics for Elected Officials, 96-2416, p. 1 (La. App. 1 Cir. 12/30/97) (per curiam) (unpublished opinion).
The original TMSL opinion had further reasoned that a "person who will be ultimately affected by a ruling of the [Board of Ethics], if and when a complaint is filed, can file an action for a declaratory judgment in the district court to determine the legal correctness of the [Board's] opinion on conduct or status." TMSL, 96-1982 at 3, 703 So.2d at 578. Based on this language, on February 3, 1998, Duplantis filed an action in the district court for a declaratory judgment that, if she were successful, would hold that the advisory opinion of the Board of Ethics barring her employment with Terrebonne General was incorrect.
On April 4, 1998, in response to the rehearing application by the Board of Ethics in TMSL, this Court otherwise denied the rehearing but withdrew the reference in the TMSL opinion to the availability of declaratory relief for a person in Duplantis's *585 position, reciting that the statement was dicta. See TMSL, 96-1982, p. 1 (La.4/24/98), 710 So.2d 792, 792 (on rehearing). Instead, we stated that: "Issues as to other possible `remedies' for persons affected by advisory opinions were not before us, and problems with specific remedies are properly addressed when such issues are squarely presented." Id. On June 22, 1998, the district court in this matter sustained an exception of lack of subject matter jurisdiction filed by the Board of Ethics and dismissed Duplantis's case. She appealed to the court of appeal.
While Duplantis's case was before the court of appeal, the Legislature, by Acts 1999, No. 252, § 1, effective June 11, 1999, amended La. R.S. 42:1142(A) to provide that:
Whenever action is taken against any public servant or person by the board or panel or by an agency head by order of the board or panel, or whenever any public servant or person is aggrieved by any action taken by the board or panel, he may appeal therefrom to the Court of Appeal, First Circuit, if application to the board is made within thirty days after the decision of the board becomes final. Any advisory opinion issued to any person or governmental entity by the board or panel or any preliminary, procedural, or intermediate action or ruling by the board or panel is subject to the supervisory jurisdiction of the appellate court as provided by Article V, Section 10 of the Constitution of Louisiana. The Court of Appeal, First Circuit, shall promulgate rules of procedure to be followed in taking and lodging such appeals. (Emphasis added.)
La. R.S. 42:1142(A). Following the statute's revision, the court of appeal, believing the Legislature had changed the law in TMSL, converted Duplantis's appeal to a supervisory writ and secured the record from the previous case (the 1996 dismissed matter) so that Duplantis could "have her day in court." Duplantis v. Louisiana Board of Ethics, 98-2056, pp. 6-8 (La.App. 1 Cir. 12/28/99) (unpublished opinion). Thereafter, on May 18, 2000, the First Circuit granted the writ with an order favorable to Duplantis reversing the Board's opinion. Duplantis v. Louisiana Board of Ethics, 00-0293 (La.App. 1 Cir. 5/18/00). We granted the writ sought by the Board of Ethics. Duplantis v. Louisiana Board of Ethics, 00-1750 (La.9/15/00), 767 So.2d 699.

Breazeale, Sachse, & Wilson, L.L.P. v. Louisiana Board of Ethics
On March 14, 2000, Breazeale, Sachse, & Wilson, L.L.P. ("Breazeale, Sachse") sought an advisory opinion from the Louisiana Board of Ethics. The substance of that request was as follows:
Breazeale, Sachse, & Wilson, L.L.P. ("BS&W") represents the Louisiana Community and Technical College System ("LCTCS") on a number of legal matters pursuant to employment by the Louisiana Attorney General's office. We request an Advisory Opinion as to whether Murphy J. Foster, III ("Foster") would be in violation of Section 1113A of the Code of Governmental Ethics if Foster, as a partner of BS & W, received any financial benefit in the form of compensation that might be derived from BS & W's representation of LCTCS.
Breazeale, Sachse further acknowledged to the Board that Foster was a member of the Governor's immediate family within the meaning of La. R.S. 42:1113(A)[2] and *586 that his ownership interest in the firm was less than 25%.
On April 17, 2000, the Board responded with Advisory Opinion 2000-216 containing three principal conclusions. First, the Board concluded that nothing in La. R.S. 42:1113(A) would prevent Breazeale, Sachse from "providing legal services to or otherwise representing the interests of LCTCS, provided the provision of such services is by partners and members of Breazeale, Sachse other than Mr. Murphy J. Foster, III." Second, the Board found that the Code of Ethics would not prohibit Foster from receiving his normal distribution of the profits from Breazeale, Sachse, even when some of those profits would be derived from the firm's representation of LCTCS. Finally, the Board concluded that La. R.S. 42:1113(A) prohibited Foster from personally rendering legal services to LCTCS because such services would constitute a prohibited "transaction."
On May 30, 2000, Breazeale, Sachse applied for a supervisory writ to the First Circuit Court of Appeal. On June 16, 2000, the First Circuit denied the writ reasoning that:
Murphy Foster, III, is an individual and as an individual he is prohibited by law from entering into a transaction with executive branch agencies because he is an immediate family member of the Governor. It is of no moment that he may be acting in his capacity as an agent of his law firm pursuant to a contract between his law firm and those agencies. He, as an individual, is an immediate family member of the governor and therefore, cannot perform the work.
Breazeale, Sachse, & Wilson, L.L.P. v. Louisiana Board of Ethics, 00-1179 (La. App. 1 Cir. 6/16/00) (denying the writ). We granted the writ of Breazeale, Sachse. Breazeale, Sachse, & Wilson, L.L.P. v. Louisiana Board of Ethics, 00-1956 (La.9/15/00), 767 So.2d 699.

DISCUSSION
The Louisiana Board of Ethics is established by Title 42, Section 1132 of the Louisiana Revised Statutes and is charged with enforcing the Louisiana Code of Ethics. See La. R.S. 42:1132. The purpose of the Code of Ethics is to further the public interest by insuring that the law protects against conflicts of interest on the part of Louisiana's public officials and state employees by establishing ethical standards to regulate the conduct of those persons. See La. R.S. 42:1101. To this end, the eleven-member Board is given the authority to investigate and pursue formal charges through either public or private hearings against an individual or entity for alleged violations of the Code of Ethics. See La. R.S. 42:1134. Upon finding a violation of the Code, the Board has the authority to impose various penalties on the responsible party. See La. R.S. 1151-57.3. Further, the Board is specifically authorized to render advisory opinions regarding interpretations of the Code of Ethics. See La. R.S. 42:1134(E). It is pursuant to this authority that the Board issued the two advisory opinions at issue in these cases.
Before La. R.S. 42:1142(A) was revised in 1999 to add that "[a]ny advisory opinion issued to any person or governmental entity by the board or panel" is subject to the supervisory jurisdiction of the appellate *587 court, we held in TMSL that "[t]here is no constitutional or legislative authority for judicial review of an advisory opinion rendered by the Commission." 703 So.2d at 577. We held that under La. R.S. 42:1142(A), "an advisory opinion by the Commission is not a `preliminary, procedural or intermediate action or ruling.'"[3]Id. Further, we explained that "[t]he preliminary or procedural actions or ruling referred to in Section 1142(A) are those rulings which the Commission makes after a proceeding before the Ethics Commission has been commenced, such as by filing of a complaint." Id.
Shortly thereafter, the legislature revised La. R.S. 42:1142(A) to give the First Circuit Court of Appeal supervisory jurisdiction over "any advisory opinion issued to any person or governmental entity by the board or panel," as well as "any preliminary, procedural, or intermediate action or ruling by the board or panel." 1999 La. Acts 252, § 1(amending La. R.S. 42:1142(A)). It is clear that the legislature intended to change the law set out in TMSL and provide legislative authority for the First Circuit to review advisory opinions of the Board of Ethics. Accordingly, the issue presented is whether the legislature has the authority under our Constitution to grant that power to our courts.
In making this determination, we are cognizant of the basic rules of statutory construction, specifically that a statute is presumed constitutional, and the burden of clearly establishing unconstitutionality rests upon the party who attacks the statute, in this case, the Board of Ethics. State v. Muschkat, 96-2922 (La.3/4/98), 706 So.2d 429, 432; State v. Newton, 328 So.2d 110, 117 (La.1975). Further, a statute must be upheld whenever possible. State v. Muschkat, supra; State v. Griffin, 495 So.2d 1306, 1308 (La.1986).
Article X, Section 21 of the Louisiana Constitution mandates that the legislature enact a code of ethics and create a board to administer the code, and provides the jurisdictional authority for judicial review of the Board's actions. Art. X, § 21 provides that "[d]ecisions of a board shall be appealable, and the legislature shall provide the method of appeal." Thus, we must determine whether advisory opinions are "decisions" of the Board under our Constitution.
We held in TMSL, before the revision of La. R.S. 42:1142 to include advisory opinions, that "[t]here is no constitutional or legislative authority for judicial review of an advisory opinion rendered by the Commission." The revision of La. R.S. 42:1142 does not change that result; there is still no constitutional authority for judicial review of advisory opinions.
To understand what constitutes "decisions" of the Board under Art. X, § 21, it is important to understand the difference between an advisory opinion issued pursuant to La. R.S. 42:1134(E) and a finding of a violation by the Board issued pursuant to the procedures outlined in La. R.S. 42:1141. An advisory opinion is usually sought by correspondence to the Board by an applicant. In the request, the applicant presents a set of facts upon which the Board bases its opinion, which is usually researched and prepared by the Board's staff. There is no investigation by *588 the Board, nor is there an adversary hearing. The applicant is placed in no different position after he receives the advisory opinion as he was before the issuance of advice. In fact, the resulting advice might have been much different had a full investigation and adversary hearing been held.
By contrast, the procedures for instituting a complaint with the Board of Ethics are set out in La. R.S. 42:1141. Upon receiving a sworn complaint from a complainant, or voting to consider a matter which the Board believes may be a violation of any provision within its jurisdiction, the matter is assigned to a panel of the Board which then conducts a private investigation to elicit evidence in order to determine whether to recommend that the Board conduct a public hearing or to indicate that no violation has occurred. La. R.S. 42:1141(B)(1), (C). The "defendant" and the "complainant" are given notice of the investigation, and the results of the investigation. La. R.S. 42:1141(C)(1), (2). During the investigation or hearing, the Board may administer oaths and affirmations, subpoena witnesses, compel their attendance, take evidence, and require the production of any records. La. R.S. 42:1141(E)(2). The defendant has the right to be represented by counsel, to cross-examine witnesses, call witnesses, and present evidence in his own behalf. La. R.S. 42:1141(E)(6). Any witness may be accompanied and advised by an attorney and may submit questions to be asked at the hearing. La. R.S. 42:1141(E)(8). No disciplinary action may be taken unless a majority of the Board or a panel of the Board consisting of more than three members, or a unanimous three-member panel, has found a violation has occurred.[4] La. R.S. 42:1141(E)(5). A wide range of penalties may be imposed by the Board for a violation, such as: (1) administrative enforcement by the public employee or former public employee's agency head or authority figure under La. R.S. 42:1151; (2) recission of any contract of, permit, or license issued by the governmental entity under La. R.S. 42:1152; (3) censure, removal, reduction in pay, demotion or fine of the public employee under La. R.S. 42:1153; (4) monetary fines of no more than $10,000 for any illegal payments under La. R.S. 42:1154; and, (5) recovery of the amount of any economic advantage gained in violation of any law within the jurisdiction of the Board and additional penalties not to exceed one-half of the amount of the economic advantage, plus forfeiture of any gifts or payments made in violation of this Chapter. La. R.S. 42:1155. It is undisputed that decisions resulting from the above procedures and findings under La. R.S. 42:1141 are appealable under Art. X, § 21.
On the other hand, we now hold that advisory opinions issued pursuant to La. R.S. 42:1134(E) are not decisions under Art. X, § 21, and therefore are not reviewable.[5] The reasons for our interpretation *589 that advisory opinions are not "decisions" under La. Const. art. X, § 21 are many. First, this Court has frequently noted that the grant of judicial power implicitly restricts our courts to review only matters which are justiciable, i.e., actual and substantial disputes with adverse parties, not hypothetical, moot, or abstract questions of law. See Cat's Meow v. City of New Orleans, 98-0601 (La.10/20/98), 720 So.2d 1186, 1193; Perschall v. State, 96-1322 (La.7/1/97), 697 So.2d 240, 251; Louisiana Associated Gen. Contractors, Inc. v. State, 95-2105 (La.3/8/96), 669 So.2d 1185, 1193. We have defined a "justiciable controversy" as "an existing actual and substantial dispute, as distinguished from one that is merely hypothetical or abstract, and a dispute which involves the legal relations of the parties who have real adverse interests, and upon which the judgment of the court may effectively operate through a decree of conclusive character." Abbott v. Parker, 259 La. 279, 249 So.2d 908, 918 (1971). This court has clearly held that "The Constitution does not vest [Louisiana Courts] with jurisdiction to render advisory opinions." Belsome v. Southern Stevedoring, Inc., 239 La. 413, 118 So.2d 458, 461 (1960). In ruling that advisory opinions of the Board of Ethics are not reviewable, in TMSL we held:
until there is some proceeding before the Commission which could result in the Commission's imposing a penalty, there is no preliminary or procedural action or ruling by the Commission that is appropriate for judicial review, either by appeal or by supervisory writs. Indeed, there is no justiciable controversy for the courts to decide.
TMSL, supra at 578. Our interpretation today, and in TMSL, comports with our long-standing principle that our courts are without jurisdiction to issue or review advisory opinions and may only review matters that are justiciable.[6]
*590 Secondly, in seeking an advisory opinion, the applicant is not adverse to the Board, nor is the Board adverse to the Board. La. R.S. 42:1134(E) authorizes the Board to issue advisory opinions and provides that "[t]he Board may render advisory opinions with respect to the provisions of this Chapter and any other law within its jurisdiction and rules and regulations issued by the board." La. R.S. 42:1134(E). An advisory opinion is simply advice as to the status or conduct of that person or some other person under the Code of Ethics. "It is not a ruling or action by the Commission that will affect the person whose conduct or status is questioned, and it cannot be enforced by any person." TMSL, supra at 577; see 2 Kenneth C. Davis & Richard J. Pierce, Jr., Administrative Law § 15.15 (1994). The Board is a disinterested party merely giving advice to a party who has sought its advice pursuant to the Board's authority under 42:1134(E).[7] This is in stark contrast to the posture of the parties upon the filing of a sworn complaint by a "complainant" against a "defendant" or the consideration of a matter that the Board has reason to believe may be a violation, and in which a private investigation is undertaken, a public hearing is held at which parties are represented by counsel, parties testify under oath and present evidence and cross-examine witnesses, and then the Board votes as to whether a violation has occurred and, if so, imposes a penalty on the former or present governmental employee.
Third, the review of an advisory opinion would depend solely on facts as represented by the requesting party, not on sworn testimony presented by opposing parties, without any investigation by the Board or adversarial hearing. Consequently, there is no record of the proceedings below for an appellate court to review as there was no hearing, no evidence, and no testimony.
Fourth, we find that the purpose of the third sentence of La. Const. art. X, § 21 was to allow a direct appeal to the court of appeal of a decision by the Board on the merits of the charged violation. In the absence of this provision, jurisdiction for *591 judicial review would be vested in the district court.[8]
For all these reasons, we find the provision of La. R.S. 42:1142(A) which provides that "[a]ny advisory opinion issued to any person or governmental entity by the board ... is subject to the supervisory jurisdiction of the appellate court as provided by Article V, Section 10 of the Constitution of Louisiana" is unconstitutional as it is contrary to Article 10, § 21 of the Louisiana Constitution which provides that "[d]ecisions of a board shall be appealable,...." An advisory opinion issued by the Board pursuant to La. R.S. 42:1134(E) is not a "decision" of the Board that is appealable.
However, we find that this provision, which was added by the legislature by Acts 1999, No. 252, § 1 is severable from the remainder of La. R.S. 42:1142. The test for severability is whether the unconstitutional portions of the law are "so interrelated and connected with the constitutional parts that they cannot be separated without destroying the intention manifested" by the enacting body. Radiophofone, Inc. v. City of New Orleans, 616 So.2d 1243, 1249 (La.1993) (citing State v. Azar, 539 So.2d 1222 (La.1989)). If the remaining portion is separable from the offending portion, this Court may strike only the offending portion and leave the remainder intact. Id. The legislature added the offending portion of the statute, i.e. "[a]ny advisory opinion issued to any person or governmental entity by the board or panel or" to the second sentence of La. R.S. 42:1142(A) in 1999. Prior to that time, the statute constitutionally provided that "Any preliminary, procedural, or intermediate action or ruling by the board or panel is subject to the supervisory jurisdiction of the appellate court as provided by Article V, Section 10 of the Constitution of Louisiana." This provision remains intact and enforceable and is unaffected by the severance of the offending portion of the statute.
Finally, in Duplantis, we must address the issue of whether the district court has subject matter jurisdiction over a declaratory judgment action seeking a determination of the application or interpretation of the Ethics Code. In Duplantis, following the First Circuit's dismissal of her writ application seeking review of the advisory opinion issued by the Board in Duplantis v. Board of Ethics, 96-2416 (La.App. 1 Cir. 12/30/97), Duplantis filed an action in the district court seeking a declaratory judgment that the advisory opinion issued by the Board of Ethics was incorrect. This declaratory judgment action was dismissed by the district court for lack of subject matter jurisdiction, and Duplantis appealed to the court of appeal. While the appeal was pending, the legislature amended La. R.S. 42:1142(A) to provide that advisory opinions were subject to the supervisory jurisdiction of the appellate court. In ruling on this appeal, the First Circuit converted the appeal to a supervisory writ and ordered the supplementation of the record with the record in Duplantis v. Board of Ethics, 96-2416. In so doing, the court noted:
Even if this court were to apply the amendments to La. R.S. 42:1142A retroactively, we would be precluded from rendering an opinion on the merits for the reason that the record before us does not contain a copy of the advisory opinion or other relevant evidence of the parties introduced before the Ethics *592 Board at its hearing. This evidence was presented to this court in Christa Duplantis v. Board of Ethics for Elected Officials, 96CE2416 (La.App. 1 Cir. 12/30/97). As we noted previously, this matter was assigned to a five-member panel of this court and was subsequently dismissed in response to the Louisiana Supreme Court's ruling in Transit.

We know of no internal procedural device whereby, as members of the instant panel, we can direct that the previous five-member panel reinstate and decide Ms. Duplantis' previous writ application.
Duplantis v. Board of Ethics, 98-2056, p. 6 (La.12/28/99), 761 So.2d 807. Under its supervisory jurisdiction over cases within its circuit under La. Const. Art. V, § 10, the First Circuit converted the appeal of the dismissal of the declaratory judgment action to a supervisory writ and ordered the record supplemented with the record in 96-2416. Id. at 7-8, 761 So.2d 807. No party filed a writ application to this Court based on this ruling. Subsequently, the First Circuit granted the writ and reversed the advisory opinion issued by the Board of Ethics. Duplantis v. Board of Ethics, 00-0293 (La.App.5/18/00). The opinion we are issuing today vacates this decision based on our finding that the appellate court lacks jurisdiction to review advisory opinions of the Board.
However, because of the unusual procedure used by the First Circuit in converting Duplantis's appeal of the dismissal of her declaratory judgment action into a supervisory writ, the status of Duplantis's declaratory judgment action is unclear, but will inevitably present itself again. Therefore, we address the issue of whether a declaratory judgment action is available to review the advisory opinions of the Board.[9] Based on our prior holdings in Jones v. Board of Ethics for Elected Officials, 96-2005 (La.5/9/97), 694 So.2d 171, modified on rehearing, 696 So.2d 549 (La.6/20/97) and Midboe, supra, regardless of whether a case or controversy is presented, a district court lacks subject matter jurisdiction as an initial matter to review the interpretation and application of provisions of the Ethics Code, absent a constitutional challenge to a provision of the Ethics Code. "The grant of exclusive jurisdiction of certain subject matter to [the Board] results in the subtraction of those matters from the district court's jurisdiction." Jones, supra, 694 So.2d at 172. Thus, the district court lacks subject matter jurisdiction over a declaratory judgment action seeking a determination of the Ethics Code's application or interpretation.

CONCLUSION
An advisory opinion issued by the Board pursuant to La. R.S. 42:1134(E) is not a "decision" of the Board under La. Const. art. X, § 21. Consequently, the provision of La. R.S. 42:1142(A) which provides that "[a]ny advisory opinion issued to any person or governmental entity by the board or panel" is subject to the supervisory jurisdiction of the appellate court is in derogation of La. Const. art. X, § 21 and is unconstitutional. Thus, we find that the First Circuit Court of Appeal has no jurisdiction to review advisory opinions of the *593 Board. Further, we find that a district court lacks subject matter jurisdiction over a declaratory judgment action seeking a determination of the Ethics Code's application or interpretation.

DECREE
For the reasons stated above, in Duplantis v. Louisiana Board of Ethics, we vacate the ruling of the First Circuit in 00-0293 (La.App. 1 Cir. 5/18/00) which reversed the Board's advisory opinion. In Breazeale, Sachse, & Wilson, L.L.P. v. Louisiana Board of Ethics, we affirm the judgment of the First Circuit denying the writ, but on different grounds. The writ should have been denied because the First Circuit lacked jurisdiction to review advisory opinions of the Board.
Duplantis v. Louisiana Board of Ethics, 00-1750VACATED;
Breazeale, Sachse, & Wilson, 00-1956 AFFIRMED.
LEMMONS, J., concurs and will assign reasons by KIMBALL, J.
CALOGERO, C.J., dissents and assigns reasons.
KNOLL, J., dissents and assigns reasons.
CALOGERO, Chief Justice, dissenting.
Today, the majority holds that (1) La. Rev.Stat. § 42:1142(A) is unconstitutional insofar as it grants the First Circuit Court of Appeal jurisdiction to review advisory opinions issued by the Board of Ethics and (2) the district court does not have subject matter jurisdiction over an action seeking declaratory relief regarding the propriety of an advisory opinion issued by the Board of Ethics. I respectfully disagree with both of these conclusions and, therefore, dissent.
The first issue raised in each of these cases, and the principle issue that prompted us to grant this writ, is whether the First Circuit Court of Appeal has jurisdiction to review advisory opinions of the Louisiana Board of Ethics. The majority finds that the Legislature is without the authority to grant the First Circuit this jurisdiction and, in doing so, declares that portion of § 42:1142(A) granting it the power to hear such cases unconstitutional.
In Transit Management of S.E. La. v. Commission on Ethics for Pub. Emp., 96-1982, p. 2 (La.12/2/97), 703 So.2d 576, 577 [hereinafter TMSL], we addressed the question of whether an advisory opinion was a "preliminary, procedural, or intermediate action or ruling by an ethics body" within the meaning of § 42:1142(A) as it read at the time. As we determined in TMSL, unchanged by our clarification on rehearing, the holding of TMSL was that an advisory opinion was not a preliminary, procedural, or intermediate action by the Board of Ethics. See TMSL, 96-1982, p. 1 (La.4/24/98), 710 So.2d 792, 792 (on rehearing). Therefore, we found that there was no statutory authority for review of advisory opinions. Shortly thereafter, the Legislature revised § 42:1142(A) to give the First Circuit Court of Appeal supervisory jurisdiction over "any advisory opinion issued to any person or governmental entity by the [Board of Ethics]" as well as "any preliminary, procedural, or intermediate action or ruling by the [Board]." See 1999 La. Acts 252, § 1 (amending La.Rev.Stat. § 42:1142(A)). It is clear that the Legislature intended to change the TMSL result and clearly provide legislative authority for the First Circuit, and ultimately this court, because of our supervisory jurisdiction over the courts of appeal, to review advisory opinions of the Board of Ethics. Therefore, the first issue before this court, as the majority points out, is whether or not the Legislature has the authority under *594 our 1974 constitution to grant that power to our courts. In TMSL this question was neither posed nor resolved.[1]
It is elementary that the Legislature possesses a plenary power to enact any legislation not prohibited by our state constitution. Board of Comm'rs of Orleans Levee Dist. v. Department of Natural Resources, 496 So.2d 281, 286 (La.1986) (on rehearing). As such, laws enacted by the Legislature are entitled to a presumption of constitutionality from our courts. See State v. Griffin, 495 So.2d 1306, 1308 (La. 1986); City of Lake Charles v. Henning, 414 So.2d 331, 333 (La.1982). Accordingly, the party attacking a statute's constitutionality, the Board of Ethics in this case, has the burden of proving its constitutional flaw and any doubt must be resolved in favor of constitutionality. See City of Lake Charles v. Chaney, 468 So.2d 1191, 1192 (La.1985); State v. Gisclair, 363 So.2d 696, 698 (La.1978). Finally, as § 42:1142(A) explicitly confers jurisdiction on the First Circuit Court of Appeal to review advisory opinions of the Board of Ethics, "it is not enough [for the Board] to show that the constitutionality [of § 42:1142(A)] is fairly debatable, but, rather, it must be shown clearly and convincingly that it was the constitutional aim to deny the Legislature the power to enact the statute." Board of Directors of Louisiana Recovery Dist. v. Taxpayers, Property Owners, & Citizens of the State of Louisiana, 529 So.2d 384, 388 (La.1988) (emphasis added); accord Ancor v. Belden Concrete Products, Inc., 260 La. 372, 379, 256 So.2d 122, 125 (1971). In my view, the Board has failed to meet this high burden in this case.
Title 42, section 1142(A) of the Louisiana Revised Statutes specifically grants the First Circuit authority to review the advisory opinions of the Board; therefore, the constitutional boundaries to the First Circuit's jurisdiction are integral to analysis of this issue. Article V, Section 10 of the Louisiana Constitution grants jurisdiction to the courts of appeal over three types of cases: civil cases, family and juvenile matters, and criminal cases triable by a jury (other than capital cases imposing a sentence of death)"except as otherwise provided by this constitution." This latter phrase "is the authority of the legislature to grant additional jurisdiction to the courts of appeal" as directed by other portions of the constitution. See Lee Hargrave, The Judiciary Article of the Louisiana Constitution of 1974, 37 La. L. Rev. 767, 805 (1977). One such example is Article X, Section 12(A) of the constitution which provides that "the final decision of *595 the [State Civil Service Commission] shall be subject to review on any question of law or fact upon appeal to the court of appeal wherein the commission is located." La. Const. art. X, § 12(A).[2] Thus, in order for the Legislature's expansion of the First Circuit's jurisdiction to cover the review of advisory opinions from the Board of Ethics to be constitutional, a separate constitutional provision must allow for it. Article X, Section 21 of the Louisiana Constitution is just such a provision.
Article X, Section 21 of the Louisiana Constitution creates the Board of Ethics and provides that: "Decisions of [the Board] shall be appealable, and the legislature shall provide the method of appeal." La. Const. art. X, § 21 (emphasis added).[3] Therefore, the issue here is the intent and meaning of the word "decisions" (of the Board). Did the constitutional delegates, and correspondingly the people in adopting the constitution, mean to limit appealable decisions to adjudications following a full adversarial hearingto justiciable controversies between adversaries or was the word "decisions" intended to include other decisions or matters likely to be within the province of an ethics board that the Legislature, as authorized by the constitution, might choose to create? Based upon both the constitutional and statutory provisions regarding a Code of Ethics prevailing in 1973 before the adoption of the 1974 Constitution as well as the debates of the delegates at the 1973 Constitutional Convention, I would find that this provision was intended to do the latter.
Prior to 1964, Louisiana did not have a Code of Ethics covering state officials or employees. In 1964, a constitutional amendment was proposed to the voters to add what came to be Article XIX, Section 27 of the Louisiana Constitution of 1921. See La. Const. of 1921, art. XIX, § 27 (1964). Upon ratification of that constitutional amendment in November of 1964, the Legislature enacted the first Code of Ethics. See 1964 La. Acts 110 (enacting La.Rev.Stat. §§ 1101-48). This new and comprehensive code was to be administered by two separate administrative bodies with somewhat different duties: the Louisiana Commission on Governmental Ethics and the Louisiana Board of Ethics for State Elected Officials. See id.
The Louisiana Commission on Governmental Ethics ("Commission on Ethics") *596 had jurisdiction to investigate alleged misconduct by any state employees other than elected officials. See La. Const. of 1921, art. XIX, § 27; La.Rev.Stat. § 42:1119 (vacated by 1979 La. Acts 443, § 1). Importantly, the Commission on Ethics did not have the power to impose sanctions on any state employees. See La.Rev.Stat. § 42:1121 (vacated). Instead, the Commission on Ethics was permitted to hold hearings on charges and then report the findings to the head of the employee's department upon finding a violation; that department head would then have the authority to impose sanctions. See id. The constitution and the revised statutes were specific in granting a right of appeal to an employee only after an action adverse to him was taken by the department head, whether prompted by the Commission's findings or an independent investigation by the department head. See La. Const. of 1921, art. XIX, § 27(3)(C); La.Rev.Stat. § 42:1121(E) (vacated). Consequently, Louisiana courts lacked the authority to review any advisory decisions (such as opinions) of the Commission until after discipline had been imposed on the employee. See Louisiana Commission on Governmental Ethics v. Leake, 264 So.2d 675, 677-78 (La.App. 1st Cir.1972) (declining to review an advisory opinion from the Commission because "it is apparent from the legislative enactment that appeals lie only from a decision in which disciplinary action is taken against any employees and only after the decision becomes final").
The second agency in place in 1973, the Louisiana Board of Ethics for State Elected Officials ("Elected Official's Board of Ethics"), as the name suggests, had jurisdiction "to investigate all allegations of violations of the code of governmental ethics enacted by the legislature with respect to all elected state officials, including members of the legislature." La. Const. of 1921, art. XIX, § 27(4)(B). The Elected Official's Board of Ethics also had no power to impose penalties; instead, upon finding a violation of the ethics code, the Elected Official's Board of Ethics would forward a copy of the findings to a district attorney for possible prosecution. See La.Rev.Stat. § 42:1144(E)(6) (vacated). Thus, the role of the Elected Official's Board of Ethics was purely advisoryit would investigate claims, hold hearings, and refer matters to a local district attorney. No finding by the Elected Official's Board of Ethics, standing alone, would have punitive consequences other than, possibly, adverse publicity.
Despite the fact that the Elected Official's Board of Ethics was a purely advisory body, constitutional authority existed for appellate review of its findings. Specifically, the Louisiana Constitution of 1921, as amended in 1964, provided that:
The decision of the Board shall be subject to appeal which shall be granted to the Court of Appeals, First Circuit, if application to the Board is made within 30 days after the Board's decision become [sic] final.
La. Const. of 1921, art. XIX, § 27(4)(C).[4] Thus, even though the Board of Ethics served a purely advisory role, its "decision" was appealable and no authority, jurisprudential or otherwise, existed to refute *597 that conclusion. The importance of this was made evident by the floor debates at the 1973 Constitutional Convention.
Throughout the debates at the Convention, it is clear from the discussion of the Delegates that the intent of this new constitutional article was primarily to shorten, and in the process simplify, the former lengthy provision.[5] It is also evident that the Convention intended to grant the Legislature considerable discretion in its ability to create the Board of Ethics, administer the Code of Ethics, and provide the procedural mechanisms for its enforcement. Importantly, when the Code of Ethics provision in the Louisiana Constitution of 1974 was initially proposed, the general provision leaving extensive authority to the Legislature contained no mention of judicial review. During the floor debate at the Constitutional Convention, the Delegates were concerned that without a specific grant of authority for judicial review in the proposed article, the Legislature would be unable to "give the appellate courts jurisdiction of an appeal from a purely administrative body without some constitutional provision for that appeal." Official Transcript of the Constitutional Convention State of Louisiana 1973, 48th day, p. 16 (Sept. 15, 1973), reprinted in 7 Records of the Louisiana Constitutional Convention of 1973: Convention Transcripts, p. 1276 (La. Const. Conv. Records Comm.1977) [hereinafter Official Transcript]. Consequently, Delegate Harmon Drew introduced an amendment that rewrote the language of the proposed Article and added the following sentence: "The decisions of the board shall be appealable and the legislature shall provide the method of appeal." Official Transcript, supra, at 38. In explaining the purpose of this provision, Drew stated that it "will give a right of appeal to effect ... to protect the individual affected." Id. at 39 (ellipsis in original).
Drew was later questioned about the exact application of this new provision regarding "decisions" being appealable and the following discussion took place:

Mr. Jenkins: Harmon, isn't it true that the Boards of Ethics right now primarily are advisory in their nature. They can censure, they can criticize, publicize, but they can't actually do anything to anyone, can they?

Mr. Drew: As I appreciate it, that's correct.

Mr. Jenkins: Well, wouldn't your amendment as written change that concept because when you say that the decisions of the board will be appealable, aren't you saying in effect that they are going to be able to do something to someone, or at least that the legislature could allow them to do something to someone and that, thus, you are going to need a means for appealing those decisions; such as removal from office, such as fines, suspensions from offices, things like that?

Mr. Drew: Not necessarily, Woody, because I think any action taken by the Board of Ethics that would be critical of a person should be subject to review.

Official Transcript, supra, at 40-41 (emphasis added). Shortly after this exchange, the amendment adding the language *598 that "decisions of the board shall be appealable...." was adopted and, on January 10, 1974, the Article was ratified by the Convention.
It appears from the above debates that the intent of the sentence "Decisions of the board shall be appealable" was to allow the Legislature to provide for appeal of any action of the Board that is adverse to the interests of a person (Delegate Drew's words were "critical of a person").
Prior to the Louisiana Constitution of 1974, the two Ethics Boards were primarily advisory. The Louisiana Commission on Governmental Ethics could only effect sanctions through department heads and the Elected Official's Board of Ethics could only refer its findings or opinion to a local district attorney. The agencies had no authority to sanction or penalize anyone for anything; nevertheless, the actions of these two agencies were appealable. See La. Const. of 1921, art. XIX, §§ 27(3)(C) & 27(4)(C). At the 1973 Constitutional Convention, Delegate Jenkins questioned Delegate Drew as to whether these agencies were advisory in nature and Drew responded that they were. Jenkins then expressed concern that an amendment mandating that "decisions shall be appealable" would effectively force the Legislature to grant the Board authority to render "decisions"something that Jenkins understood to only include final adjudicatory actions such as removal, suspensions, or fines. Drew disagreed and clarified that the intent of the amendment was not to mandate such a grant of authority by the Legislature because, he perceived, all actions of the Board should be subject to review, whether adjudicatory or advisory. The import of Drew's statement is that, under the constitution, the Legislature would have the ability to create a Board of Ethics both to administer the Code of Ethics and impose sanctions or critically affect a person's interests by something less than sanctions (as for instance, advisory opinions), but that in all events, appeal to the Court of Appeal would be permitted.[6]
Again, the Legislature's enactment is entitled to a presumption of constitutionality and the Board bears the burden to prove "clearly and convincingly that it was the constitutional aim to deny the Legislature the power to enact" Title 42, Section 1142(A) of the Revised Statutes. Board of Directors of Louisiana Recovery Dist. v. Taxpayers, Property Owners, & Citizens of the State of Louisiana, 529 So.2d 384, 388 (La.1988). In my opinion, the Board falls well short of meeting this burden. To the contrary, a review of this Legislative history reveals that the intent of the framers of the constitution was to permit the Legislature to provide judicial review of any action taken by the Board of Ethics that would adversely affect any person's interests. Thus, I would find that the grant of judicial review over advisory opinions by the Board of Ethics in La.Rev.Stat. § 42:1142(A) is not prohibited by the Louisiana Constitution.
The majority cites four reasons why advisory opinions cannot be reviewed pursuant to § 42:1142(A): (1) courts can only review justiciable controversies, (2) there is an absence of adverse parties, (3) there is no fully developed record with sworn testimony, and (4) the only purpose of the third sentence of article X, section 21 of the Louisiana Constitution was to allow direct review of the Board's actions at the *599 court of appeal level. See ante at pp. 588-91. None of these reasons are persuasive.
First, the majority reasons that our courts are limited to the review of justiciable controversies and that the present cases do not so qualify. In doing so, the majority overrules a portion of Midboe v. Commission on Ethics for Public Emp., 94-2270 (La.11/30/94), 646 So.2d 351. In Midboe, an attorney licensed in Louisiana requested an advisory opinion from the Commission on Ethics regarding post-employment restrictions on the practice of law contained within the Code of Ethics. Following an adverse advisory opinion by the Commission, Midboe filed a Petition for Declaratory Relief seeking an order declaring the Code of Ethics unconstitutional as it applied to the regulation and practice of law. This court held that a sufficient justiciable controversy existed between Midboe and the Commission on Ethics to permit review by the court. See Midboe, 94-2270 at pp. 4-5, 646 So.2d at 351. Specifically, the court reasoned that:
Midboe, as a former state agency head within two years following termination of his public service, is faced with an immediate and genuine situation, the applicability of ethics code's rules to his present attorney employment opportunities. Midboe has a real interest in obtaining a declaratory judgment to clarify his employment options. If he proceeded without such a declaration, he might subject himself and his future employer to the [Board's] administrative sanctions. The [Board] has a statutorily mandated duty to administer and enforce the ethics code. Thus, there is a genuine controversy between the parties.
Midboe, 94-2270 at pp. 9-10, 646 So.2d at 356 (citations omitted). The six justices reaching this conclusion in Midboe were correct.
Under the declaratory judgment articles of the Code of Civil Procedure, a court has the jurisdiction to declare rights, status, and other legal relations whether or not the person seeks other relief. See La. Code Civ. Pro. art. 1871. Further, the purpose of the articles is to settle and afford relief from uncertainty and insecurity with respect to those rights, status and other legal relations; thus, the articles should be liberally construed and administered to permit a court to act. See La. Code Civ. Pro. art. 1881. "A person is entitled to relief by declaratory judgment when his rights are uncertain or disputed in an immediate and genuine situation and the declaratory judgment will remove the uncertainty or terminate the dispute." Louisiana Associated Gen. Contrs. v. State, 95-2105, p. 15 (La.3/8/96), 669 So.2d 1185, 1191 (quoting In re P.V.W., 424 So.2d 1015, 1020-21 (La.1982)).
An individual seeking an advisory opinion from the Board of Ethics is not seeking an opinion regarding some future, abstract, or hypothetical situation. To the contrary, that individual is only prompted to request an advisory opinion in the face of an impending business transaction or employment opportunity. In fact, the Board will only consider a request for an advisory opinion from a person or entity "with a demonstrable objective interest in the Board's interpretation, construction, and application of any law within the Board's jurisdiction." See Rules for the Louisiana Board of Ethics §§ 101 & 601, available at http://www.ethics.state.la.us/general/rules.htm.
When confronted with an advisory opinion from the Board adverse to his interests, the individual has two options: (1) forego the employment opportunity, as Duplantis did in this case; or (2) ignore *600 the advisory opinion and all but assure disciplinary action by the Board, see, e.g., Hill v. Commission on Ethics for Pub. Emp., 442 So.2d 592 (La.App. 1st Cir. 1983). The exact purpose of the Code of Ethics is to protect against conflicts of interest "without creating unnecessary barriers to public service." La.Rev.Stat. § 42:1101. Refusing to allow an individual to ascertain the correctness of the Board's advice puts that person in the precarious position of honoring an opinion that he believes is truly incorrect (and thus, forego a business opportunity or public service[7]) or violate the opinion, risk fines of up to $10,000, and hope to be vindicated from the sanction on appeal.[8] As former Justice Tate so eloquently stated: "To require private individuals to do business under the act at their peril in order to acquire standing is to defeat a major purpose of the declaratory judgment act." Louisiana Independent Auto Dealers Assoc. v. State, 295 So.2d 796, 801 (La.1974), quoted in, Midboe, 94-2270 at p. 10, 646 So.2d at 356. Thus, I would conclude, as did six justices in Midboe, that the rendering of an advisory opinion by the Board of Ethics adverse to the requesting party's interest creates a sufficiently justiciable controversy to permit our courts to grant declaratory relief when appropriate. Assuming for the moment that Midboe was wrong when it concluded that a justiciable controversy exists in this situation and that it should be overruled in that respect, the First Circuit should still retain jurisdiction over these cases despite the lack of a justiciable controversy in the face of an express constitutional directive to do so.
The Louisiana Constitution vests the judicial power of the State in the supreme court, the courts of appeal, the district courts, and other courts established by the constitution. See La. Const. art. V, § 1. It is true that this court has frequently noted that the grant of judicial power implicitly restricts our courts to review only matters which are justiciable, i.e., actual and substantial disputes with adverse parties, not hypothetical, moot, or abstract questions of law. See Cat's Meow v. City of New Orleans, 98-0601, p. 8 (La.10/20/98), 720 So.2d 1186, 1193; Perschall v. State, 96-0322, p. 15 (La.7/1/97), 697 So.2d 240, 251; Louisiana Associated Gen. Contractors, Inc. v. State, 95-2105, p. 9 (La.3/8/96), 669 So.2d 1185, 1193; St. Charles Parish Sch. Bd. v. GAF Corp., 512 So.2d 1165, 1171 (La.1987) (on rehearing); Stoddard v. City of New Orleans, 246 La. 417, 423, 165 So.2d 9, 11 (1964). Consequently, as a general rule, the constitution prohibits the courts from reviewing or rendering advisory opinions. See Cat's Meow, 98-0601 at 8, 720 So.2d at 1193; Jordan v. Louisiana Gaming Control Bd., 98-1122, p. 18 (La.5/15/98), 712 So.2d 74, 85; American *601 Waste & Pollution Control Co. v. St. Martin Parish Police Jury, 627 So.2d 158, 162 (La.1993); Church Point Wholesale Beverage Co. v. Tarver, 614 So.2d 697, 702 (La. 1993); Belsome v. Southern Stevedoring, Inc., 239 La. 413, 421, 118 So.2d 458, 461 (1960). However, just as the constitution can generally require justiciable controversies, through the implicit rule found in the above cited cases, there is no reason that it cannot provide exceptions to it in situations such as the one found in article X, section 21 of the Louisiana constitution which provides the Legislature broad authority to grant the courts of appeal review of decisions of the Board of Ethics.
Second, the majority finds that while Duplantis and Breazeale, Sachse are "interested" parties in this litigation, the Board is an uninterested party indifferent to the ultimate resolution by this court. As such, the majority concludes that the issues of law cannot be fully debated so as to provide for a resolution of a true controversy. I would agree that, under the present statutory scheme, the Board is an uninterested party and further agree that it is strongly advisable for our courts to resolve conflicts only between "interested" parties. There is no doubt that this is a valid concern and our courts should seek to avoid this problem through the use of implicit rules such as justiciability whenever possible. Despite our concerns, however, the explicit directive by the Legislature, authorized by the constitution, should supercede these concerns. The constitution is specific in providing that "the legislature shall provide the method of appeal" of the Board's decisions. La. Const. art. X, § 21. This is a broad grant of authority by the constitution and, under it, the majority should not second guess the Legislature's statutory scheme.
Third, the majority finds that the review of an advisory opinion would necessarily depend solely on facts as represented by the requesting party, not sworn testimony flushed out after a full hearing or trial on the merits. A review of the records in these cases supports those contentions in that there is no sworn testimony of any kind speaking to the facts providing the basis for these advisory opinions. Unfortunately, however, when the legislature implements its power under the constitution by directing our courts to review a specific matter, we lack the authority to find that such a mandate is inadvisable for lack of a record; instead, I would find that in light of the constitution's grant of authority to the Legislature in this case, this court should be bound to perform this review as the cases come before us.[9]
Finally, the majority finds that the only purpose of the third paragraph of Article X, section 21 was to permit review of the imposition of sanctions by the Board of Ethics directly with the First Circuit. For the reasons more fully articulated above, I must disagree. As the delegate who authored the sentence stated, the purpose of that sentence was to make "any action taken by the Board of Ethics that would be critical of a person ... subject to review." *602 Therefore, the majority ignores the intent of this provision altogether.[10]
This first holding by the majority disposes of the Breazeale, Saches matter as that case was brought directly to the First Circuit following the rendition of the advisory opinion by the Board of Ethics. The Duplantis case, however, originated as a declaratory judgment action in the district court and, consequently, the second issue presented for the court's review is whether the district court has subject matter jurisdiction over this claim. The majority finds that "a district court lacks subject matter jurisdiction to review the interpretation and application of provisions of the Ethics Code, absent a constitutional challenge to a provision of the Ethics Code." Ante p. 591. In reaching this conclusion, the majority relies on Jones v. Board of Ethics for Elected Officials, 96-2005 (La.5/9/97), 694 So.2d 171, 172, modified on rehearing, (La.6/20/97), 696 So.2d 549, and Midboe, 94-2270 (La.11/30/94), 646 So.2d 351, 355. The majority's reliance on these two decisions is misplaced.
The Jones decision was based solely on the analysis performed by this court in Midboe; therefore, I will address Midboe directly. As previously mentioned, Midboe filed suit in the district court seeking a declaratory judgment declaring portions of the Code of Ethics unconstitutional. The Midboe court did conclude that a person seeking a determination of the application or interpretation of the Code of Ethics was limited to bringing such a claim to the First Circuit due to the statutory and constitutional scheme in place at the time; however, the court's reasoning on this point has since been overruled. Specifically, the Midboe court reasoned:
"[An] advisory opinion by the Commission is a preliminary or intermediate action or ruling by an ethics body within the meaning of La. R.S. 42:1142." The Commission argues that, despite titling the petition as one for declaratory judgment, the real issue was review of the Commission's advisory opinion.

Had Midboe's petition sought a determination of the ethics code's application or interpretation, the constitutional and statutory scheme outlined above provides for an initial determination utilizing the Commission's expertise and review by the court of appeal. However, Midboe's petition clearly sought a determination of the constitutionality of the statutory provisions of the ethics code. The determination whether a statute is unconstitutional is a purely judicial function. The judicial power of the state is constitutionally vested in the courts. The Commission is not a court but is an administrative agency in the executive branch of state government. An administrative agency does not have the authority to determine the constitutionality of statutes. Thus, the district court, and not the Commission, had jurisdiction to rule on the constitutionality of the statutes.
Midboe, 94-2270 at 6-7, 646 So.2d at 355 (emphasis added) (citations omitted). Thus, the court concluded, in what could only be characterized as dicta, that the district court did not have subject matter jurisdiction over claims regarding the interpretation or application of the Code of Ethics. As made evident in the above quoted passage, however, the court's reasoning *603 focused on the fact that the claimant would have an avenue of relief through the First Circuit Court of Appeal. Since Midboe first reached this conclusion, the reasoning supporting its conclusion has been overruled. In TMSL, we found that an individual seeking a review of an advisory opinion concerning the interpretation or application of the Code of Ethics could not seek relief through the First Circuit under the statutory scheme in place at the time and, today, the majority affirms this ruling. Therefore, the reasoning which initially supported Midboe's conclusion that the district court did not have subject matter jurisdiction over this type of claim is no longer good law and the majority's reliance on it is misplaced.
The majority's opinion today raises the following simple problem: Duplantis has a right to declaratory relief under the Louisiana Code of Civil Procedure because of the adverse advisory opinion issued by the Board of Ethics; however, there is no court in the state with the power to grant it. Such a conclusion seems illogical. The better view would be that the district court has jurisdiction over the claim pursuant to its general jurisdiction over all civil matters. See La. Const. art. V, § 16(A). Therefore, in my opinion, Duplantis should be permitted to pursue her declaratory action in the district court.
In sum, I must disagree with both of the majority's conclusions today. First, any valid, independent reasons cited by the majority for disfavoring the review of advisory opinions by the Board of Ethics are superceded by the directive from the constitution to make such a review available where authorized by the Legislature.[11] Second, the district court possesses the subject matter jurisdiction to hear a claim for declaratory relief seeking a ruling on the accuracy of an advisory opinion from the Board of Ethics.
For the foregoing reasons, I respectfully dissent.
*604 KNOLL, Justice, dissenting.
The issue in these consolidated cases is whether an advisory opinion is a decision within the context of Article X Section 21 of the Louisiana Constitution. The majority contrasts an advisory opinion with a full blown investigation of a formal complaint and holds an advisory opinion is not a decision under LA. CONST. art. X, § 21. In his extensive dissent, Chief Justice Calogero delves into the legislative intent behind "decisions" by examining the debates of the delegates at the 1973 Constitutional Convention and finds an advisory opinion is a decision. I agree with Chief Justice Calogero's excellent dissent; however, I believe the word "decisions" encompasses advisory opinions under LA. CONST. art. X, § 21 for additional reasons and dissent separately to explain my view.
"The words of a law must be given their general prevailing meaning." LA. CIV.CODE ANN. art. 11. Words must be read in context and must be construed "according to the common and approved usage of the language." LA.REV.STAT. ANN. § 1:3. The majority fails to apply the general prevailing meaning of the word "decisions." A decision is "[a] determination arrived at after consideration of facts, and, in legal context, law. A popular rather than technical or legal word; a comprehensive term having no fixed, legal meaning. It may be employed as referring to ministerial acts as well as to those that are judicial or of a judicial character." BLACKS LAW DICTIONARY 407 (6th ed. 1990) (emphasis added).
It is not a casual matter to request an advisory opinion. There is a formal procedure with which the affected person must comply. To receive an advisory opinion from the Louisiana Board of Ethics, an affected person must request an advisory opinion in writing. RULES FOR THE BOARD OF ETHICS, Chapter 6 § 601. The request must, inter alia, disclose the requesting person's interest in the question presented, state the governmental agency and/or the individual involved, and state sufficient facts to enable the Board to respond. Id. Under this procedure, the Board considers facts presented by a person affected by the opinion and makes a determination. Although the majority correctly stated that the facts are not developed in an adversarial context, the majority fails to contrast a "decision" with a "final decision." A "final decision" is "[o]ne which leaves nothing open to further dispute and which sets at rest [a] cause of action between parties. One which settles rights of parties respecting the subject-matter of the suit and which concludes them until it is reversed or set aside." BLACKS LAW DICTIONARY 629 (6th ed. 1990). A "final decision" is one that contemplates an adversarial process between two parties, not a "decision." The drafters of the constitution purposefully used the word "decisions" as opposed to "final decisions." Compare LA. CONST. art. X, § 12 (using both "decision" and "final decision" in the context of removal and disciplinary cases before the State Civil Service Commission) with LA. CONST. art. X § 20 (using only "decisions").
The Administrative Procedure Act ("APA") provides a definition of a decision in that context as "the whole or any part of a final disposition ... of any agency, in any matter other than rulemaking, required by constitution or statute to be determined on the record after an opportunity for an agency hearing...." LA.REV. STAT. ANN. § 49:951(3). This narrow definition of decision is appropriate to the APA; however, it is not tailored to fit the special needs of governmental ethics where a broader definition of decision is required.
*605 The Board's ethics opinions are called advisory opinions; however, this does not mean that the opinions are merely advice and not decisions. Rather, if we disregard the form which these decisions take and examine the "substantial operation" of the opinion, see United States v. Thompson, 251 U.S. 407, 412, 40 S.Ct. 289, 64 L.Ed. 333 (1920) (holding that the question of whether a quashing of an indictment was a "`decision or judgment sustaining a special plea in bar, when the defendant has not been put in jeopardy'" is a question "to be determined not by form but by substance."), we see that an advisory opinion impacts people in a concrete and significant manner. We should adopt this view in which substance triumphs over form.
I stated in my dissent in Transit Management of Southeast Louisiana, Inc. v. Commission on Ethics for Public Employees, No. 96-1982 p. 2 (La.1997), 703 So.2d 576, 578-79, that advisory opinions in the context of government ethics can aggrieve people. An advisory opinion can have costly compliance requirements and can have a "chilling effect" on the actions of people affected by the opinion who are concerned that a request for an advisory opinion may result in a full blown investigation and formal charges.
Because ethical considerations are not always clear, the Board issues advisory opinions to help people make ethical decisions. What happens when a petitioner disagrees with the Board's advisory opinion on an unclear and close issue? The majority forces petitioners to challenge the Board's opinions with conduct and face the peril of formal charges even though the propriety of the underlying ethical issue is close and unclear. This approach to governmental ethics suggests that one may be better off not asking for an advisory opinion and taking his or her chances that the conduct they think has unclear ethical considerations will go unnoticed rather than draw attention to the conduct by petitioning for an advisory opinion. This approach is illogical and unconscionable. One would be better off not even asking for an advisory opinion under these circumstances. The substantive effect of advisory opinions demonstrates that advisory opinions from the Board are more akin to judgments than to advice.
Simply stated, the majority's narrow interpretation of "decisions," in essence, means only "violations" are appealable. If LA. CONST. art. X, § 21 meant only "violations" are the decisions of the Board that are appealable, the word "violations" would have been used rather than the more encompassing term, "decisions." It is an inherent function of the Board to give advisory opinions upon proper request. These advisory opinions, which concretely and significantly impact an affected person's life and are part of the decision making authority of the Board, are encompassed in the broad term "decisions," but are left unchecked by judicial review under the majority's narrow interpretation. "Decisions" must be read in the context of the function of the Board of Ethics. The majority reads it too narrowly by restricting it to formal complaints and thereby diminishes the valuable and necessary service provided by the Board to those who seek its counsel. Thus, I find that "decisions" includes advisory opinions in the context of LA. CONST. art. X, § 21. Any other reading conflicts with the general prevailing definition of "decisions" and with the practical consequences involved when a public official is forced to dispute an advisory opinion by challenging it through conduct. For these reasons, I respectfully dissent.
NOTES
[1] At the time Duplantis filed her writ application, La. R.S. 42:1142(A) provided:

Whenever action is taken against any public servant or person by the board or panel or by an agency head by order of the board or panel, or whenever any public servant or person is aggrieved by any action taken by the board or panel, he may appeal therefrom to the Court of Appeal, First Circuit, if application to the board is made within thirty days after the decision of the board becomes final. Any preliminary, procedural, or intermediate action or ruling by the board or panel is subject to the supervisory jurisdiction of the appellate court as provided by Article V, Section 10 of the Constitution of Louisiana. The Court of Appeal, First Circuit, shall promulgate rules of procedure to be followed in taking and lodging such appeals.
[2] La. R.S. 42:1113(A) provides:

No public servant, excluding any legislator and any appointed member of any board or commission and any member of a governing authority of a parish with a population of ten thousand or less, or member of such a public servant's immediate family, or legal entity in which he has a controlling interest shall bid on or enter into any contract, subcontract, or other transaction that is under the supervision or jurisdiction of the agency of such public servant.
[3] In TMSL, we retracted a statement we made earlier in dicta in Midboe v. Commission on Ethics for Public Employees, 94-2270 (La.11/3/94), 646 So.2d 351, that an advisory opinion by the Commission was reviewable by an appellate court as "a preliminary or intermediate action or ruling by an ethics body" and overruled the jurisprudence holding that advisory opinions by the Commission are reviewable as preliminary or intermediate actions or rulings. TMSL, supra at 578, n. 3.
[4] La. R.S. 42:1141(A) provides the procedures whereby the board members sit en banc, or in panels of not less than three members. La. R.S. 42:1142(E)(5) provides that no disciplinary action may be taken by the board or panel unless a majority of the board or panel finds that a violation has occurred. However, when a panel consists of only 3 members, the vote must be unanimous.
[5] The dissent argues that the delegates to the Constitutional Convention of 1973, in drafting La. Const. Art. X, § 21, intended for "decisions" to include purely advisory opinions. The dissent bases this argument on the comments of Harmon Drew, the delegate who introduced the amendment which added the sentence "The decisions of the board shall be appealable and the legislature shall provide the method of appeal." Before this amendment, Art. X, § 21 contained no mention of judicial review. Another delegate was concerned that the amendment could possibly give the prior existing Louisiana Commission on Governmental Ethics and Louisiana Board of Ethics for State Elected Officials powers they did not possess, that is, the power to impose sanctions. Drew's comment was that "any action taken by the Board of Ethics that would be critical of a person should be subject to review" and the dissent interprets his comment as indicative of his understanding that "all actions of the Board should be subject to review, whether adjudicatory or advisory." As the dissent points out, in adopting Mr. Drew's amendment, the delegates to the convention were addressing the concern that, without a specific grant of authority for judicial review in the proposed article, the Legislature would be unable to provide a method of appeal for decisions of these boards. At that time, although the boards did not have the power to impose sanctions, they did have the power to investigate alleged misconduct, conduct hearings on the alleged violations, and issue determinations of whether a violation of the Code of Ethics had occurred. See La. R.S. 42:1119, 1121 and 1144 (vacated by 1979 La. Acts 443, § 1). These determinations were decisions that were meant to be appealable under Art. X, § 21, just as they were under the Constitution of 1921 and the former statutory provisions. There is no indication that the delegates intended that purely advisory opinions, which the two boards were also authorized to issue under La. R.S. 42:1119(D)(9) and 42:1144(E)(7), would also be appealable under Art. X, § 21.
[6] In Midboe, supra, an attorney filed a Petition for Declaratory Judgment and Injunction in the district court seeking an order declaring a provision of the Code of Ethics and an unfavorable advisory opinion issued by the Ethics Board unconstitutional. The Board argued that the district court did not have subject matter jurisdiction to rule on Midboe's petition under La. R.S. 42:1142. In ruling on this initial jurisdictional question, this Court held:

Had Midboe's petition sought a determination of the ethics code's application or interpretation, the constitutional and statutory scheme outlined above [La. R.S. 42:1142] provides for an initial determination utilizing the Commission's expertise and review by the court of appeal. However, Midboe's petition clearly sought a determination of the constitutionality of the statutory provisions of the ethics code. The determination whether a statute is unconstitutional is a purely judicial function. The judicial power of the state is constitutionally vested in the courts. La. Const. Art. 5, § 1. The Commission is not a court but is an administrative agency in the executive branch of state government. An administrative agency does not have the authority to determine the constitutionality of statutes. Thus, the district court, and not the Commission, had jurisdiction to rule on the constitutionality of statutes.
646 So.2d at 354. After finding that the Court had jurisdiction because Midboe raised a constitutional challenge, this Court went on to find that Midboe's challenge presented a justiciable controversy as follows:
Midboe, as a former state agency head within two years following termination of his public service, is faced with an immediate and genuine situation, the applicability of ethics code's rules to his present attorney employment opportunities. Midboe has a real interest in obtaining a declaratory judgment to clarify his employment options. If he proceeded without such a declaration, he might subject himself and his future employer to the Commission's administrative sanctions. The Commission has a statutorily mandated duty to administer and enforce the ethics code. Thus, there is a genuine controversy between the parties. "To require private individuals to do business under the act at their peril in order to acquire standing is to defeat a major purpose of the declaratory judgment act."
Id. (Cites omitted.) To the extent that Midboe held that a justiciable controversy is always presented by a challenge to an advisory opinion, that holding was overruled by six justices of this Court, including the Chief Justice, in TMSL and we reaffirm that result today.
[7] Advisory opinions of the Board are similar in this respect to opinions issued by the Attorney General pursuant to La. R.S. 49:251, which are likewise not reviewable by a court.
[8] This constitutional provision is similar to the additional appellate jurisdiction provided to the courts of appeal by La. Const. art. X, § 12(A), which authorizes a direct appeal to the court of appeal for a "final decision" of the State Civil Service Commission.
[9] As discussed, infra, on pages 584-85, we stated in our original TMSL opinion that a "person who will be ultimately affected by a ruling of the [Board of Ethics], if and when a complaint is filed, can file an action for a declaratory judgment in the district court to determine the legal correctness of the [Board's] opinion on conduct or status." TMSL, supra, 703 So.2d at 578. On rehearing, we withdrew that statement, stating that "[i]ssues as to other possible `remedies' for persons affected by advisory opinions were not before us, and problems with specific remedies are properly addressed when such issues are squarely presented." TMSL, supra, 710 So.2d at 792 (on rehearing).
[1] The majority opinion states: "We held in TMSL, before the revision of La. R.S. 42:1142 to include advisory opinions, that `[t]here is no constitutional or legislative authority for judicial review of an advisory opinion rendered by the Commission.'" See ante at p. 587. This statement by the majority is, quite simply, taken out of context. The TMSL holding had nothing whatsoever to do with the interpretation of the word "Decisions" in Article X, Section 21 of the Louisiana Constitution; in fact, the constitution is not referenced at any point in either the original or rehearing opinions. As we clarified on rehearing, the actual holding of TMSL was simply that an advisory opinion was not a "preliminary, procedural or intermediate action or ruling" as contemplated by La.Rev.Stat. § 42:1142(A) as it read at the time. See TMSL, 96-1982 at 1, 710 So.2d at 793 (on rehearing). Further, a read of our TMSL decision reflects the fact that we followed the well-settled rule that our courts will dispose of a case on statutory grounds before addressing a constitutional issue. See, e.g., Blanchard v. State, 96-0053, p. 2 (La.5/21/96), 673 So.2d 1000, 1002; Matherne v. Gray Ins. Co., 95-0975, p. 3 (La.10/16/95), 661 So.2d 432, 434. Contrary to the majority's statement, no part of the TMSL decision could be fairly read to conclude that the word "Decisions" in Article X, Section 21 of the Constitution does not include advisory opinionsthe question presented in this case.
[2] Similarly, decisions of the City Civil Service Commission "shall be subject to review on any question of law or fact upon appeal to the court of appeal wherein the commission is located...." La. Const. art. X, § 12(B). Additionally, Article X, Section 50 provides that "the decision of the [State Police Commission] shall be subject to review on any question of law or fact upon appeal to the court of appeal wherein the commission is located." La. Const. art. X, § 50; cf. La. Const. art. III, § 6 (granting the supreme court jurisdiction to reapportion the representative districts if the legislature fails to do so as required by the constitution).

Further, just as the Legislature can add to the jurisdiction of the courts of appeal when authorized by the constitution, it can withdraw that jurisdiction as well when so authorized. See La. Const. art. IV, § 21(E) (permitting the legislature to withdraw jurisdiction of the courts of appeal over actions of the Public Service Commission by providing for appeal directly from the district court to the supreme court).
[3] Article X, Section 21 provides in its entirety as follows:

The legislature shall enact a code of ethics for all officials and employees of the state and its political subdivisions. The code shall be administered by one or more boards created by the legislature with qualifications, terms of office, duties, and powers provided by law. Decisions of a board shall be appealable, and the legislature shall provide the method of appeal.
La. Const. art. X, § 21.
[4] It is also important to note that the Louisiana Constitution of 1921, as amended, characterized the Elected Official's Board of Ethics's advisory action as a "decision." La. Const. of 1921, art. XIX, § 27(4)(C). Further, the language granting appeal of the Board's "decisions" in the former constitution is strikingly similar to the language in the present constitution. Compare La. Const. of 1921, art. XIX, § 27(4)(C) ("The decision of the Board shall be subject to appeal....") with La. Const. art. X, § 21 ("Decisions of a board shall be appealable....").
[5] Article XIX, Section 27 of the Louisiana Constitution of 1921 consisted of four subsections, nine subsubsections, and three subsubsubsections whereas Article X, Section 21 of the Louisiana Constitution of 1974 consists of a total of three sentences. It is well established that one of the goals of the 1973 Constitutional Convention was to produce a shorter and simpler constitution for the state. See Mark T. Carleton, Fundamental Special Interests: The Constitution of 1974, in In Search of Fundamental Law: Louisiana's Constitutions, 1812-1974 141 (Warren M. Billings & Edward F. Haas eds.1993).
[6] The majority takes the position that Drew's comments regarding appealability are only in reference to the investigatory and regulatory actions of the Board. See ante at p. 588, n. 4. However, nothing in the discussion between Delegates Jenkins and Drew indicates that they were only concerned with these powers of the Board.
[7] For example, in City of Baton Rouge v. Commission on Ethics for Pub. Emp., 94-2480 (La.App. 1 Cir. 5/5/95), 655 So.2d 457, and Board of Trustees of the Emp. Retirement Sys. v. Commission on Ethics for Pub. Emp., 95-0062 (La.App. 1 Cir. 5/5/95), 655 So.2d 1355, members of a Board of Trustees resigned from their positions because of an advisory opinion by the Board concluding that a violation of the Code of Ethics would occur absent such action.
[8] Justice Knoll cited this argument in her dissent from TMSL:

An advisory opinion may have expensive compliance requirements for both public and private persons. The opinion may have a "chilling effect" on the actions of affected individuals, justifiably concerned about an impending formal action against them if they challenge the Commission's opinion by their conduct. Rather than place the expense and burden of humiliation of an ethics investigation on the individual, it is better to encourage the challenge of advisory opinions in the courts.
TMSL, 96-1982, p. 2 (La.12/2/97), 703 So.2d 576, 578 79 (Knoll, J., dissenting).
[9] Of course, while the problem created by a lack of a record in these cases could be addressed by the Legislature in the form of a statutory provision or by this court in the form of procedural rules, the Board could also take action to cure this problem. Under La.Rev.Stat. § 42:1134, the Board has the authority to adopt rules and regulations for the carrying out of the duties and powers of the Board. In fact, under the authority granted by this provision, the Board has outlined several procedural requirements that must be satisfied before the Board will issue an advisory opinion. See Rules for the Board of Ethics §§ 601-10, available at http://www.ethics.state.la.us/general/rules.htm. Under that same authority, the Board would surely be permitted to circumscribe additional procedural rules to tighten the parameters under which it issues advisory opinions.
[10] My opinion on this issue is driven solely by the fact that there is a specific constitutional authority for the review of advisory opinions of the Board of Ethics only. I fully agree with the long-standing general rule against the review of advisory opinions. It is only in this situation, where a specific constitutional provision grants the Legislature this power, would I find that we have the power to undertake such a review.
[11] Notably, this state would not be alone in granting its courts the ability to act on matters not otherwise justiciable. As the United States Supreme Court so appropriately noted, the issue of whether or not a state court may render an advisory opinion is purely a matter of state law. See New York State Club Assoc. v. New York, 487 U.S. 1, 8 n. 2, 108 S.Ct. 2225, 101 L.Ed.2d 1 (1988). In fact, a survey of the constitutions and jurisprudence of our sister states reveals that twelve states permit their courts to render advisory opinions in certain situations.

Typically, the authority for such action by the courts is found directly within the constitution itself. See Colo. Const. art. VI, § 3; Fla. Const. art. IV, § 1 & art. VI, § 3; Mass. Const., pt. 2, chap. III, art. II; Me. Const. art. VI, § 3; Mich. Const. art. III, § 8; N.H. Const., pt. 2, art. 74; R.I. Const. art. X, § 23; S.D. Const. art. V, § 5. In three states, however, the authority for such review is found within the statutes. See Ala.Code § 12-2-10; Del.Code tit. 10, § 141 & tit. 29, § 2102; Okla. Stat. tit. 22, § 1003. In these states, however, limits on the power of the courts to act under such authority exists because of the constitutional concerns. See, e.g., Opinions of Justices, 209 Ala. 593, 96 So. 487, 488-89 (1923) (permitting the issuance of advisory opinions with several limiting conditions); Opinion of Justices, 413 A.2d 1245, 1247 (Del. 1980) (limiting such opinions to strictly constitutional questions); Okla. Stat. tit. 22, § 1003 (allowing for the Governor to request an advisory opinion only on the sufficiency of the proceedings in a capital case). Finally, North Carolina's Supreme Court will issue advisory opinions in limited situations solely within their own discretion when the court finds the issue presented significant enough to warrant such action. See Waddell v. Berry, 31 N.C. (9 Ired.) App. (1848); see also Margaret M. Bledsoe, Comment, The Advisory Opinion in North Carolina: 1947 to 1991, 70 N.C.L.Rev. 1853 (1992).
For a more detailed discussion of the use of advisory opinions in other states and countries, as well as a discussion of the procedures utilized by courts in tailoring their treatment of those opinions, see Pascal F. Calogero, Jr., Advisory Opinions: A Wise Change for Louisiana and Its Judiciary?, 38 Loy. L.Rev. 329 (1992).